12 U.S. 9 (1814)
8 Cranch 9
GRIFFITH
v.
FRAZIER.
Supreme Court of United States.
February 9, 1814.
Present... . . All the Judges.
Absent. ... WASHINGTON, J.
*11 HARPER, for the Plaintiff in error.
JONES, contra.
PINKNEY, Attorney General, same side.
*19 MARSHALL, C.J. delivered the opinion of the Court as follows:
The Plaintiff in error, who was also Plaintiff in the Circuit Court, brought a writ of trespass quare clausum fregit, in order to try his title to certain lands, lying in the district of South Carolina, which were in possession of the Defendant.
The title of the Plaintiff, which constituted the sole question in the cause, appeared, on the trial, to be as follows:
Joseph Salvadore, being seized of the lands in which the trespass is alleged to have been committed, departed this life some time in the year 1786, having first made his last will in writing, in which he named several executors, one of whom, Joseph Dacosta, made probate of the will, and took upon himself the burthen of executing the same; after which, in the year 1789, he left the state of South Carolina, and resided in Georgia. In the year 1790, letters of administration on the goods of Salvadore, unadministered by Dacosta his qualified executor, were granted to James Lamotte.
In August, 1786, a judgment was obtained by Daniel Bourdeaux against Salvadore. In January, 1791, a thirty day rule, which, by an act of the state of South Carolina, was, in certain cases, substituted in the place *20 of a scire facias, was issued to revive this judgment against Lamotte as administrator of Salvadore. This role being served and returned, the following indorsement was made on it: "15th March, 1791, made absolute subject to a future argument."
"Fi. fa. 16th April, 1791."
An execution issued on this judgment, under which the land was sold, and was conveyed by the sheriff to Peter Freneau by a deed dated the 6th day of June, 1791. On the 16th of July, 1796, a decree was rendered in the suit, Pierce Butler v. Daniel Bourdeaux and Peter Freneau, directing the said Peter to convey to such person as Pierce Butler should appoint. In pursuance of this decree, Peter Freneau conveyed to Samuel Jackson, under whom the Plaintiff claims by regular conveyances.
On the motion of the Defendant, the Circuit Court instructed the jury that the letters of administration granted to James Lamotte were totally void; that therefore the judgment of Bourdeaux was not revived against the estate of Salvadore; that the sale and conveyance by the sheriff passed no title to the purchaser; and that the evidence was not sufficient to maintain the Plaintiff's action. The jury found a verdict for the Defendant, and judgment was rendered in his favor. The Plaintiff excepted to the opinion of the Court, and has sued out a writ of error to the judgment.
The sole defect alleged in the title of the Plaintiff being in that part of it which depends on the sale and conveyance of the sheriff to Peter Freneau, the validity of that sale is the principal if not the only question in the cause. In support of it the Plaintiff contends,
1st. That the letters of administration, being durante absentia of the executor, were properly granted to James Lamotte.
2d. If the ordinary erred in granting these letters, still Lamotte was administrator de facto; and his acts bound the estate of Salvadore until those letters should be revoked.
*21 3d. That the judgment on which the execution issued was properly revived by a Court of competent jurisdiction, and its judgment can be questioned only in an appellate Court.
The negative of these propositions is maintained by the Defendant in error.
That the appointment of an executor, and his acceptance of the office, constitute a complete legal owner of the personal estate of the deceased is admitted; but it is contended that these acts suspend without annihilating the power of the ordinary. So long as the executor is capable of exercising the authority with which he has been invested by the testator, it can be conferred on no other person; but when he becomes incapable, from any cause whatever, as by insanity or death, the power of appointing some person, who shall secure the estate from ruin, necessarily reverts to that tribunal which the law appoints for the general purpose of providing for the management of the property of dead persons. All cases of temporary administration, as during the minority of an executor, or during his absence previous to the probate of the will, are considered as exercises of the same power, though in a less degree, and as proving that the ordinary may, after the executor has qualified, if he shall absent himself so as, in the opinion of the ordinary, to disqualify him from performing his duty, appoint an administrator de bonis non with the will annexed, whose power shall continue until the return of the executor.
The Court does not concur in this reasoning. In the cases stated at bar, and in all cases where temporary administration has been granted, unless under a special act of the legislature, the executor was for the time, absolutely incapable of performing his duty. There existed an actual legal disability to perform the functions of his office. Until probate of the will, and until letters testamentary are obtained, the executor cannot obtain any judgment; because it cannot appear that he is executor.
There is, therefore, an absolute necessity for appointing some person who, until probate, shall take care of *22 the estate. But this is not the case with an executor who, after taking out letters testamentary, absents himself from the state. He is still capable of performing, and he is still bound to perform, all the duties of an executor. There exists no legal disability in the executor, and, consequently, there is no necessity for transferring to another those powers which the testator has conferred on a person selected by himself.
This power does not appear ever to have been exercised by the ordinary in England anterior to the statute of 38, George 3d; and in South Carolina, the ordinary possesses no power which was not possessed by the ordinary in England previous to that statute. The practice of the particular ordinary who acted in this case, would not be sufficient to constitute the law, had it even never received judicial reprobation; but the case of Ford v. Travis puts an end to any doubt on this point.
The second point is one of more doubt and greater intricacy. That the ordinary erred in granting letters of administration to Lamotte, is thought very apparent; but the effect of these letters is less obvious. By the Plaintiff it is contended, that they constituted Lamotte an administrator de facto, rendered his acts valid, so far as third persons are interested, and exempted them from question where they can be examined only incidentally. By the Defendant it is contended, that they were granted by a person having no jurisdiction in the case, and are therefore an absolute nullity; That Lamotte was not, de facto, the administrator of Salvadore, and that his acts, as administrator, stand on no better or higher ground than the acts of any other person who should assume that character.
The well known distinction between an erroneous act or judgment by a tribunal having cognizance of the subject matter, and the act or judgment of a tribunal having no cognizance of the subject, is not denied; but it is contended that the ordinary had jurisdiction in this case. The ordinary, in South Carolina, is the Court in which wills are proved; in which letters testamentary, and letters of administration are granted. He judges whether the applicant be entitled to administration or not, and rejects or admits the claim, according *23 to his opinion of the law. Whether his judgment be correct or not, still it is his judgment; and when exercised upon an application for administration, it is exercised on a subject cognizable in his Court.
That he grants letters of administration in cases not expressly authorized by statute, and in which a will exists in which an executor is named, proves that he has jurisdiction in such cases; and if he grants administration in one of them improperly, the judgment is erroneous and voidable, but not void.
This argument has been very strongly urged, and there is great force in it. The difficulty of distinguishing those cases of administration in which a Court having general testamentary jurisdiction, may be said to have acted on a subject not within its cognizance, is perceived and felt. But the difficulty of marking the precise line of distinction does not prove that no such line exists.
To give the ordinary jurisdiction, a case, in which, by law, letters of administration may issue, must be brought before him. In the common case of intestacy, it is clear that letters of administration must he granted to some person by the ordinary; and though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority; because he had power to grant letters of administration in the case. But suppose administration to be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet the ordinary must always enquire and decide whether the person whose estate is to be committed to the care of others, be dead or in life. It is a branch of every cause in which letters of administration issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint, with the character or powers of an administrator. The case, in truth, was not one within his jurisdiction. It was not one in which he had a right to deliberate. It was not committed to him by the law. And although one of the points occurs in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction.
*24 The case of letters of administration granted on the estate of a person in full life, is not the only one which may serve for illustration; suppose administration to be granted on the estate of a deceased person whose executor is present, in the constant performance of his executorial duties. Is such an appointment void, or is it only voidable?
In the opinion of the Court it would be an absolute nullity.
The appointment of an executor vests the whole personal estate in the person so appointed. He holds as trustee for the purposes of the will, but he holds the legal title in all the chattels of the testator. He is, for the purpose of administering them, as much the legal proprietor of those chattels as was the testator himself while alive. This is incompatible with any power in the ordinary to transfer these chattels to any other person by the grant of administration on them. His grant can pass nothing: it conveys no right; and is a void act.
If the ordinary possesses no power to grant administration where an executor is present performing his duty, what difference can his absence make, provided that absence does not disqualify him from executing his trust? If all his powers as an executor remain, if he is still capable of appearing in Courts of justice as the representative of the deceased, if he is still the legal owner of the chattels of the deceased, and still capable of disposing of them, it would seem that he is potentially present though personally absent. It is not easy to perceive any principle on which the ordinary can assert his power to take the estate out of the executor and vest it in an administrator. If he cannot do this, then the attempt to do it must be a void act. If the administrator durante absentia be only the agent of the executor, it still occurs that the executor can himself appoint, and is the proper person to appoint, his own agent. There is no necessity for the intrusion of the ordinary.
Let the case be supposed of a suit by the executor while actually resident abroad. Would he be incapable of sustaining the action? Would his absence be a good *25 plea in bar? If it would not, how can the grant of letters of administration to another take the property in the thing sued for out of the executor and place it in that other?
Letters testamentary, when once granted, are not revocable by the ordinary. He cannot annul them, or transfer the legal interest of the executor to any other person. His rights and his duties are beyond the reach of the ordinary. How, then, can this be effected by the grant of letters of administration?
The cases in which administration has been granted notwithstanding the existence of a will, appear to be cases in which it is not apparent that there is any person possessing right in the chattels of the testator, or cases in which that person is legally disqualified from acting.
Where administration is granted pending a dispute respecting a will, it is not certain that there is an executor, or that there is a will.
If it be granted during the minority of an executor, it is because the executor is legally disqualified from acting, and indeed has not taken upon himself, and could not take upon himself the trust reposed in him. He may, when of age, reject all the rights and powers conferred by the will; and, consequently, the interest is not yet a vested interest. The rights and powers of the ordinary remain until those of the executor commence.
So in the case of an absent executor who has not yet made probat of the will and qualified. Those letters testamentary which are indispensable to his character as executor, and which, during their existence, leave the ordinary without any further power over the subject, are not yet granted. The executor has as yet no evidence that he is executor. He is not yet able to act as one. He may never be able to act; for he may never take out letters testamentary. He may renounce the executorship. The ordinary, then, is not yet deprived of that power which he possesses to appoint a person to represent a dead man who has no representative. His *26 jurisdiction over the subject remains until he parts with it by issuing letters testamentary.
The difference between granting administration in cases where there is a qualified executor, capable, in law, of acting, and where he has not qualified, is such as, in reason, to justify the opinion that though, in the latter case, the ordinary may have jurisdiction, and his act, though erroneous, may be valid till repealed, yet, in the former case he can have no jurisdiction, and his act is in itself an absolute nullity.
If, under any circumstances, the ordinary could grant administration during the absence of an executor who has made probat of the will and is legally competent to act, then he would have jurisdiction of the subject, and would judge of those circumstances; but if, in no possible state of things, he could grant such administration, it would be difficult to conceive how he can have jurisdiction.
If we refer to authority, we can find no case and no dictum which admits the jurisdiction of the ordinary, where there is an existing executor capable of acting. In many cases it is stated, that an administration granted where there is such an executor is void. Toller, in his "law of executors, page 120, says, "If there be an "executor, and administration be granted before probate, "and refusal, it shall be void on the wills being afterwards "proved, although the will were suppressed, or "its existence were unknown, or it were dubious who "was executor, or he was concealed, or abroad at the "time of granting the administration." It is also void "if granted because the executor has become a bankrupt," or if granted, "durante minoritate where the infant had "attained his age of seventeen," until the statute of 38, G. 3. So "if granted by a bishop where the intestate had "bona notabilia, or by an archbishop of effects in another "province."
The case of Ford v. Travis, decided in South Carolina, is express to this point, and renders a further reference to English books unnecessary.
The counsel for the Plaintiff admits this to be the law *27 where an absolute administration is granted; but denies the law to be applicable to the grant of a temporary administration.
However correct this distinction may be in many cases, its application to that at bar is not admitted.
No temporary administration can be granted where there is an executor in being, capable of acting, and where the case will not justify the grant of a temporary administration, it would seem to be as completely out of the jurisdiction of the ordinary, as the grant of an absolute administration, where that is not within his power.
The case, put by Toller, of administration durante minoritate where the executor is of the age of 17, seems full in point. This is a temporary administration, and the minority of the executor is a fact for the consideration of the ordinary. Yet if, in such a case, he grants administration, the act is void, because, in fact, it is not a case in which he can grant it.
The reasoning of the Court in the case of Ford v. Travis, appears applicable to this case. They say the executor having proved the will, "was in the nature of a trustee; he could neither abandon his trust, nor be deprived of his interest in the estate of the deceased by any act of the ordinary. The ordinary, by proving the will and qualifying the executor, executed his power; and no law exists in this state, authorising him to resume it during the life time of the qualified executor, notwithstanding he may be absent from the state. Letters of administration granted under such circumstances are void ab initio.
If the ordinary cannot resume his power, so as to grant an absolute administration, he cannot resume it for a limited time. He cannot, by any act of his, divest the interest of the executor for an instant. The power may revert to him by operation of law, but cannot be assumed by any act of his own.
The grant of a temporary administration, as during the minority of an executor, is ad usum et commodum *28 executoris. But in this case, the administration is, for the time, absolute, and makes the administrator the entire representative of the deceased. It would not be unworthy of remark, if the case depended on it, that though the application of Lamotte was for administration during the absence of the executor, yet the grant itself is without limitation.
But, in its very nature, the appointment of an administrator, during the absence of an executor under no disability, is essentially nothing more than the appointment of an agent for that executor. This, the ordinary has not the power to do. The executor alone can appoint his agents.
If the ordinary had no jurisdiction in the case, then the grant of administration was void ab initio, and all the acts of the grantee are void  Toller, 128, 3, Term. Rep. 125.
It is contended by the Plaintiff, that could this administration even be considered as null, where that forms the direct question before the Court, as it did in Ford v. Travis, yet that point cannot be examined where it is collateral and incidental.
The answer which has been given at bar to this argument is entirely satisfactory. The question has never been examined in a Court of law sitting as an appellate Court. The question has never been, whether the letters of administration shall be revoked or not, but whether they were originally void, so as not to warrant the particular act in support of which they were alleged.
But in this case, the letters of administration come as directly before the Court as in the case of Ford v. Travis. The conveyance from the sheriff to Freneau forms a part of the Plaintiffs title; and the validity of that conveyance may depend on the question whether Lamotte was or was not the administrator of Salvadore. The question, therefore, must necessarily be decided; and a majority of the Court is of opinion that administration was granted by a Court having no jurisdiction in the particular case, and is therefore absolutely void.
*29 3d. It is contended on the part of the Plaintiff, that the judgment on which the execution issued was properly revived by a Court of competent jurisdiction, whose judgment is therefore conclusive until reversed.
The first objection made to this judgment of revivor is, that it was made without legal process. The thirty day rule is substituted for the siere facias only in cases where lapse of time prevents the Plaintiff from suing out execution.
However this Court might construe the law on an appeal from a judgment of revivor in such case, that question has been decided by a Court of competent jurisdiction, and cannot be reviewed here.
The second objection is, that the letters of administration being a mere nullity, no party representing the estate of alvadore was before the Court, and consequently the judgment could not bind that estate.
This question is one of considerable difficulty Had the judgment been revived against the executor himself, without the service of process, it would perhaps, while in force, have protected all proceedings under it. But this judgment is revived against Lamotte, who was not the representative of Salvadore. In the opinion of a majority of the Court, an execution on this judgment could not legally be levied on the property of Salvadore; and if so, the title was not vested in the sheriff by the service of the execution, and could not be conveyed by him to the purchaser. Upon this point, the case cited from 1st Wilson, 302, is a strong one against the opinion of the Court: but in that case, the execution, though irregular, was issued on a real judgment, and justified the sheriff in taking the effects of the deceased. On its face it was unexceptionable. It issued at an improper time; but in all other respects was correct. In this case, the execution issued on a judgment which was itself a nullity; and it authorized the sheriff to take the effects real and personal of Joseph Salvadore in the hands of James Lamotte to be administered. Now the property of Salvadore was not in the hands of Lamotte, but was in the hands of his executor.
*30 The case in Wilson, too, is so briefly, I might say obscurely, reported, as to leave the principle, on which the Court decided, entirely uncertain. It does not appear that the object of the motion extended further than the restoration of the money. This was not an attempt to set aside the sale; and nothing appears in the case from which is to be conclusively inferred what the opinion of the Court would have been on that question.
In the opinion of a majority of the Court, there is no error in the judgment of the Circuit Court, and it is affirmed with costs.

Wednesday, February 16th.

HARPER observed that he understood the opinion of the Court to be founded considerably on the form of the fieri facias, inasmuch as it directed the sale of the lands of Salvadore in the hands of Lamotte, when, in fact, there were no lands in the hands of Lamotte.
MARSHALL, Ch. J.
That was one ground of the opinion: but another, was, that the sale was founded on a void judgment.
HARPER, as to the first point, suggested to the Court that the form of the fieri facias was against the lands as well as the goods.