## GREGOR v. SLINGLUFF.

April 23, 1836.

*Rule to show cause why a new trial should not be granted.*

A magistrate refusing to permit bail to be entered for an appeal from a judgment rendered by him, denies the appeal itself.

*It seems* that a constable, who is in default in not executing an *execution* issued by a magistrate, and against whom for such default a *scire facias* issues according to the 12th section of the act of March 20th, 1810, upon which judgment is rendered against him by the magistrate, is not entitled to an appeal from such judgment.

THIS was an action on the case tried before STROUD, J., in which the plaintiff declared, that on the 3d of May 1834, he was sued by the administrator of one John Miller deceased, before the defendant, *a justice of the peace* for the county of Philadelphia, for a debt, &c. ; that on the 10th of May 1834, the defendant, as *justice of the peace,* rendered a judgment against him for 16 dollars 96 cents ; that from this judgment he intended to appeal to the court of common pleas, and for this purpose tendered sufficient surety, which the defendant would not accept but maliciously refused to permit the appeal.

The evidence on the trial was, a transcript from the defendant's docket, by which it appeared that a judgment had been rendered at the suit of the administrator of John Miller deceased, against one Francis Murphy, for 10 dollars, upon which an execution had been issued, directed to and placed in the hands of *George Strowhouer, constable,* returnable on a particular day, agreeably to the act of assembly of March 20th, 1810. *Strowhouer* neglected to execute this writ, and on the 22d of February 1834 the defendant, as *justice of the peace,* in conformity with the 12th section of the act just referred to, issued a summons or *sci. fa.,* commanding *Strowhouer* to appear, and show cause why an execution should not issue against him for the amount of the execution against *Murphy,* which he had neglected to execute. On the return of the summons or *sci. fa., Strowhouer,* in the opinion of *the justice,* having shown no sufficient cause for his neglect, a judgment was entered against him for 11 dollars 15 cents. From this judgment *Strowhouer* took an appeal ; and *George Gregor,* the present plaintiff, became his surety in the recognizance. *Strowhouer,*

[Gregor v. Slingluff.]

however, neglected to file this appeal in proper time with the pro-thonotary of the common pleas; and on the 3d of May 1834, the defendant as *justice of the peace*, at the suit of the original plaintiff, the administrator of Miller, issued a *sci. fa.* to *Gregor* on his recognizance. This was made returnable May 10th, 1834, on which day judgment was entered against him (Gregor) for 16 dollars 96 cents, the amount of the judgment against Strowhouer, and costs stated to have accrued on the appeal by *Strowhouer.* This is the judgment from which the *plaintiff Gregor* alleges he wished to appeal, but was prevented in consequence of the refusal of the *defendant Slingluff* to accept of the surety, which was tendered for that purpose in proper time.

A witness for the plaintiff, Davis, testified thus: " In the summer of 1834, I was requested to call on Mr Slingluff to go bail for Mr Gregor on an appeal. I went to Mr Slingluff and told him my business. He asked me if I knew what I was about, or something to that effect. I told him, I understood I was going bail for George Gregor on an appeal, and I understood the amount was 10 dollars; that I was willing to run any risk. He intimated that there would be trouble concerning it. He said the original debt was 10 dollars, but with the costs amounted to 15 or 16 dollars, and advised me if I wanted to keep out of trouble to let it alone. I told him I felt perfectly safe about the matter, and was willing to go bail if he was willing to take me. He either asked me or I told him that I had no real estate. I told him I was willing to take my affirmation that I was worth a certain sum, if he was willing to hear it. He said that would not answer. I might be worth the amount to-day and might transfer my property, or something to that purpose. Among other things, he said Esquire Murphy had promised to go bail, and he expected him to come up. I then resided at Manyunk, and kept store there. I can say with safety I was then worth 100 dollars."

On his cross-examination the witness said: " The person who requested me to go bail for Mr Gregor, was Esquire Murphy. I went up at his request. I don't remember with certainty whether I told Mr Slingluff so, but I think I did. He said he wished Esquire Murphy to come up and go bail, or state the reason why he would not. It was between the 28th of May and the 1st of June 1834, that I went to Esquire Slingluff's. When I came back, I immediately saw Esquire Murphy and told him about it. I saw Gregor the second day afterwards. I remember I considered myself to have been entirely refused."

[Gregor v. Slingluff.]

The defendant's counsel requested that the jury should be instructed, " that there was no evidence that the plaintiff had demanded an appeal of the magistrate (the defendant), or that the appeal had been refused, and that without such evidence the plaintiff could not recover." This instruction was refused by the judge in the extent thus asked, and he told the jury, that if they believed Davis was sufficient surety, that he had offered himself as such within twenty days from the 10th of May exclusive of that day, and that the *defendant had refused to accept him in order to prevent the appeal from being taken,* and not from a well grounded belief that he was insufficient in point of property, they might find for the plaintiff, notwithstanding there was no direct evidence that Davis had gone to the magistrate's at the particular instance of the plaintiff; that it appeared from the evidence of Davis that the magistrate had been informed that Esquire Murphy was to be bail, and if Davis went at his request, the magistrate had no right to object.

The judge who tried the cause was further of opinion that *Strowhouer,* the defaulting constable, was not entitled, according to the true meaning of the 12th section of the act of assembly of March 20th, 1810, to an appeal from the judgment rendered against him; and that the appeal, though allowed, and all proceedings consequent upon it, were null and void; and after stating this to the jury, he reserved the point, whether the want of jurisdiction of the magistrate in this respect could be taken advantage of *by him* to defeat the present action, instructing the jury, that if they should find upon the other points submitted to them against the defendant, they should consider the law on the point reserved with the plaintiff.

The verdict was for the plaintiff.

The defendant moved for a *new trial,* and assigned for reasons:

" 1. [Omitted.]

" 2. Conceding the authorization by the plaintiff of Davis's tender of himself as surety on the appeal, and his sufficiency, the judge erred in charging that the refusal to accept *surety* on the appeal, was a denial of the appeal itself.

" 3. The law on the reserved point is with the *defendant.*"

*I. Norris,* for plaintiff.
*Dallas,* for defendant.

The opinion of the Court was delivered by
Stroud, J. (after stating the facts and disposing of the first

[Gregor v. Slingluff.]

point).—On the trial, the defendant's counsel relied mainly on the *second* point.   The language of the 4th section of the act of assembly is, " that if the party appellant shall enter bail to appeal within twenty days after judgment, such appeal shall be effectual in case the party appellant shall file the transcript of the record of the justice in the prothonotary's office, on or before the first day of the next term of the court of common pleas of the proper county, after entering such bail as aforesaid."   Two acts are essential on the part of the appellant to effect an appeal : 1. Entering bail within twenty days after judgment ; 2. Filing the transcript of the record of the justice in the prothonotary's office, on or before the first day of the next term of the court.   To the accomplishment of either of these duties, the concurrence of the justice is indispensable.   Can it be doubted then that to refuse his concurrence in respect to *either,* is a denial of an appeal ?   The correctness of the charge upon this point cannot therefore, it appears to me, be questioned.

On the *third* point, although not free from difficulty, I entertain a decided opinion that the verdict cannot be disturbed.   *Assuming* the charge to be correct in the assertion that *Strowhouer,* the constable, was not entitled to his appeal, and that though allowed to him by the justice it was a *nullity,* and that the *scire facias* against Gregor, founded upon it, was, on that account, likewise a *nullity;* yet this very circumstance constituted, in itself, a complete defence for Gregor, and might have been taken advantage of in the court of common pleas on an *appeal ;* Masteller *v.* Trimbly, 6 *Binn.* 33 ; Eason *v.* Smith, 8 *Serg. & Rawle* 343 ; although a *certiorari* is a more appropriate and an equally efficacious remedy.   Herrigas *v.* M'Gill, 1 *Ashmead* 152.   Without doubt, a person against whom a judgment is given by a justice of the peace, *on a subject not within his jurisdiction,* is not remediless, although he may be denied both the appeal and *certiorari.*   Such a judgment would be *coram non judice,* and subject to examination in a *collateral* action.   Griffith *v.* Frazier, 8 *Cranch* 9 ; Lessee of Kemp *v.* Kennedy, 1 *Peters's C. C. Rep.* 36 ; Walker *v.* Turner, 9 *Wheat.* 546, 548.   But as an *appeal* or *certiorari* would have been a direct and speedy and certain remedy, it was an important right of the party, and ought to have been granted without the slightest objection.

Having decided on the point reserved in support of the verdict, on an *assumed* construction of the 12th section of the act of assembly of 1810 *most favourable to the defendant,* this opinion might close here.

[Gregor v. Slingluff.]

But it is proper to state distinctly, that my opinion on this point, and which alone gives colour of defence to the present action, is, as was shown by the authorities cited on the argument against a new trial by the plaintiff's counsel, in direct conflict with a decision of the supreme court, which has been noticed with commendation by Judge Hallowell, as president of the court of common pleas, and practially recognised by the present able incumbent of that office. The point to which I allude is, that a constable against whom proceedings have been had for neglect in regard to a legal return to an execution, is fixed by the decision of the justice against him, and not entitled to an *appeal.* I asserted this to be the law in my charge to the jury, from an examination of the act of assembly during the trial, not being aware at the time that any opinion of an adverse character had ever been expressed. But in Pritchett *v.* Moore, 1 *Ashmead's Rep.* 26, Judge Hallowell, in illustration and by way of enforcement of the decision in that case, thus expresses himself: "by the 12th section of the same act, (act of 1810) the judgment against a constable, in case of his not paying over money received by him in the execution of his office, is directed, as in this case, to be *without stay* ; and yet the supreme court at their last session in Sunbury, in Crouse *v.* Mann, (not reported, but taken from the manuscript note book of Judge Gibson) decided, that in such a case the *right of appeal* still remained, and they actually reversed the judgment of the common pleas who had dismissed it." The decision alluded to by Judge Hallowell remains *un*reported ; a circumstance in itself calculated to throw some doubt on the authenticity of Judge Hallowell's information and at all events giving countenance to the inference, that the court were not satisfied with the decision. Under this persuasion I may be permitted, I trust, without incurring the charge of presumption, to say, that a comparison of the 19th with the 12th section of the same act of assembly, irresistibly compels the conclusion, that a positive inhibition of an appeal to the constable in the case contemplated, was designed by the legislature. The expressions in the 12th section are : " if the said constable either neglects to appear on the day mentioned in such summons, or does not show sufficient cause why the execution should not issue against him, then the justice shall enter judgment against such constable, &c., on which judgment there *shall be no stay of execution,* and upon application of the plaintiff or his agent, *the said justice shall issue an execution against the constable for the amount of such judgment.*" And the 19th section reads

thus: "any constable who has or may hereafter give security, agreeably to law, for the faithful performance of the duties of his office, and afterwards, on *neglecting* or *refusing* to perform such duties, shall have judgment rendered against him for such *neglect* or *refusal*, and on being prosecuted for the recovery of such judgment, becomes insolvent, abandons his country, or from any other reason it becomes impracticable for such judgment or judgments to be recovered from such constable as aforesaid, or where a constable makes such *default* and abandons his country before judgments are had against him, *then, and in such case only,* the justice before whom the judgment or judgments stand unpaid, shall be, and is hereby authorized, &c., to issue a *scire facias,* and proceed against *such bail* for the recovery of judgments had as aforesaid, *in the manner that constables are now suable,* SAVING ONLY THE RIGHT OF APPEAL TO SUCH SURETIES."

That the language, "in the manner that constables are now suable," refers to the provisions of the 12th section, is too plain to admit of a doubt; and when it is directed that the constable's *sureties* shall be proceeded against by way of *substitution* for their absconding *principal,* on the very judgments rendered against *him,* and in the *manner* in which *he* might be sued, with the *single exception* that *they* should be *entitled to appeal*; what is this but to say that the constable had *not* such right? And what mode of interpretation is so reasonable as to construe one part of a law by another part of the same law? The terms, "without stay of execution," followed in immediate connexion by the injunction to the justice "*to issue execution*" at the instance of the plaintiff, naturally import that the point of *final* adjudication had been reached previously. A reluctance to admit of a construction which would infringe upon *trial by jury* has induced courts to disregard the ordinary rules of interpretation of statutes in many instances, and to consider as equivocal what otherwise would be deemed eminently perspicuous and precise. Upon this principle the decision in Guilky *v.* Gillingham, 3 *Serg. & Rawle* 93, that an appeal may be taken on a *scire facias post annum et diem,* before a justice of the peace, is placed, and I think *rightly,* as not a word in the act of assembly contravenes this construction in the slightest degree; and the same ground is taken in Pritchett *v.* Moore, without the aid, however, of a parallelism in the essential point, the language of the act; while, in all probability, Crouse *v.* Mann would be found without any other support, though in manifest collision with the plain meaning of the 12th section viewed in combination

[Gregor v. Slingluff.]

with the 19th section, a combination which must have been over-
looked, or the decision would have been otherwise.

Rule discharged.(*a*)

*Rule to show cause why a new trial should not be granted.*

(*a*) See Evans *v.* Fry, 3 *Watts's Rep.* 208, reported after this decision was made.