BLAKELY & COPELAND ·v. FRAZIER.

1. This court cannot consider exceptions alleging error in the findings of fact by a jury in a law case, as it has appellate jurisdiction in chancery cases only.

2. An account-sales of cotton is not evidence of the correctness of the items composing it, but may be submitted to the jury as containing the debt in an itemized form, subject to its further proof by the admissions, conduct or acts of the defendant in connection therewith or otherwise.

3. Where a factor shipped the cotton of a planter through cotton sellers, who demanded reclamation on account of overdrafts by the planter, and it was submitted to arbitration to determine who should pay this reclamation in the first instance, and the award was that it should be primarily paid by the factor, who accordingly paid it—in action afterwards brought by the factor against the planter to recover the amount of the reclamation so paid, the award is not proof of the overdrafts, but the plaintiff may introduce it in evidence as a part of the history of the transaction, and as a basis for evidence of the acts and conduct of the defendant in reference thereto.

4. It not certainly appearing that the verdict was reached in disregard of the judge's instructions, his order refusing a new trial not disturbed.

5. Where action is brought by a factor to recover money paid for defendant at his request on account of overdrafts upon cotton shipped by him to Liverpool, the trial judge did not err in refusing to charge "that there could be no proof of overdrafts by defendant without proof that the cotton was duly sold, its price," &c., as, under the pleadings, the indebtedness might be established by the acknowledgments of the defendant.

6. New parties cannot be brought in until, under the order of the court, the summons has been amended.

7. When leave has been obtained to amend either the summons or complaint, one or both, the order granting the leave must be strictly complied with, or the step taken will be a nullity.

8. The Court of Probate cannot appoint an executor; its grant of letters testamentary to one not nominated in the will is a nullity, and should be utterly disregarded by the courts.

9. A testator appointed "A. my executor, and in case of his death or refusal to qualify" he appointed "B. and C. joint executors of this will." A. qualified, and, while still alive and acting, the Court of Probate issued letters testamentary to B. *Held,* that the Court of Probate had no jurisdiction to appoint B. executor, and that he was not a co-executor with A.

---

Before WALLACE, J., Edgefield, March, 1882.

A very full statement of all the facts of this case will be found in the report of the first appeal, 11 *S. C.* 122. See, too, 15 *S. C.* 615. To the statement here made in the opinion of the court, it will be proper to add only that portion of Marshall Frazier's will nominating his executors, and the requests to charge made by defendants and refused by the presiding judge, and forming the grounds of their exceptions, numbers 6–12.

The extract from the will is as follows:

"Fifth. I appoint my son, William H. Frazier, my executor, to carry out the provisions of this, my last will and testament, and in the event of his death or refusal to qualify, I appoint my son-in-law, Sheppard Spencer, of Alabama, and my son-in-law, William A. Sanders, joint executors of this will."

The requests to charge were as follows:

"That plaintiffs must prove that they sold the cotton, when they sold it, and the prices for which they sold it, and the expenses of shipment and sale in Liverpool, England, where it

is alleged in the pleadings that it was sold." His Honor did not charge this request, but marked on the margin—"Cannot be charged without qualification."

"That there can be no proof of an overdraft by Frazier on his cotton until it is shown by proof that the cotton was duly sold, and what it brought, and that the charges made for expenses and advances upon the same must be proved to have been actually paid, and that they were reasonable and proper charges against the same." His Honor did not charge this request, but marked it on the margin—"Refused for same reason."

"That plaintiffs must prove each and every item charged and claimed by them against Marshall Frazier for advances to him on his cotton, and for all charges for the shipment of the same, both in Columbia, Charleston, New York and Liverpool, to show that he made any overdraft on his cotton." His Honor did not charge this request, but wrote on the margin—"Refused; cannot be charged without qualifications."

"That plaintiffs must prove that they advanced the $990.82 charged by them in their account rendered to Frazier, or that they paid out the same for him; and they must also prove for what it was paid, so as to show that it was a reasonable and proper charge against him." His Honor did not charge this request, but wrote on the margin—"Refused for the above reason."

"That the charges in the account rendered Frazier of $429.52 and $267.67 entered as charges of Marshall, Beach & Co. on seventy-two bales cotton, and thirty-seven bales cotton, must be proved by plaintiffs, and that plaintiffs must prove for what purposes said charges were made, so that it can be ascertained that said charges were reasonable and just and legal." His Honor did not charge this request, but marked on the margin— "Refused for same reason."

"That plaintiffs must prove that the drafts of Solomon Root & Co., referred to in the accounts rendered Frazier must be proved by the plaintiffs, and that it must be proved that they were paid." His Honor did not charge this request, nor mark it refused.

" That the drafts of Solomon Root & Co. were not Frazier's drafts if actually drawn and paid, and that they are not proper charges against him." ˙His Honor did not charge this request, nor mark it refused.

The appeal was heard on December 11th, 1882, and being ordered for re-argument on the.question of the statute of limitations, was again heard May 21st, 1883.

*Messrs. A. J. Norris, L. F. Youmans* and *Pringle T. Youmans,* for appellants.

*Messrs. J. P. Carroll, J. C. Sheppard* and *Pope & Haskell,* contra.

November 12th, 1883.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.. In August, 1871, the plaintiffs, respondents, instituted the action below against William H. Frazier, one of the defendants, as executor of Marshall Frazier, deceased, demanding judgment for the sum of $5,099, with interest thereon from December 10th, 1866, less $120, admitted by plaintiffs to be due the said Frazier, said amount being due them, as alleged, for so much paid ˙by them to Marshall, Beach & Co., of Charleston, on account of an overdraft of the said Frazier on a lot of 212 bales of cotton, shipped by the said plaintiffs for the said Frazier, through Marshall, Beach & Co., to Liverpool. The defendant Frazier answered the complaint denying the indebtedness of the estate, and also suggested that W. A. Sanders had qualified as one of the executors of Marshall Frazier. This answer seems to have been put in in November, 1871.

In March, 1872, the plaintiffs obtained an order " That they have leave to amend their summons and complaint by adding the name of William A. Sanders, one of the executors of Marshall Frazier, deceased, as a defendant to the action." It appears that no action was taken under this order, or at least there is nothing in the brief showing action. In October, 1873, a second

·order was passed by Judge Carpenter, " That the case be with-drawn from the jury, and that plaintiffs have leave to amend their complaint within thirty days by making as a party defendant, William A. Sanders, as co-executor of William H. Frazier, of the last will and testament of Marshall Frazier, with apt words to charge him." January 14th, 1874, the summons and complaint, as amended, were served on W. A. Sanders, and on W. H. Frazier on March 27th, 1874. To this amended complaint, Frazier and Sanders answered separately; Frazier submitting, in addition to his former answer, that the complaint of plaintiffs had not been amended within the thirty days allowed in his order, and the said amended complaint and summons had not been served on the said William A. Sanders as required by law; and he claimed the benefit of this non-compli-ance. Sanders, in his answer, denied the debt, plead the statute of limitations, and, also, that the amended complaint and summons had not been served on him in the manner as required by law, or within the time specified in the order.

The case was heard at the May Term, 1876, of the court of Richland county, with verdict for the plaintiffs. A new trial, however, was granted on appeal to the Supreme Court. 11 *S. C.* 122. It was then transferred to Edgefield county, where the defendants resided, and in 1879 it came up for trial before Judge Wallace, who, upon motion of the defendants, ordered a non-suit. This order was set aside by the Supreme Court and a new trial granted (15 *S. C.* 615); which trial was had at the March Term of the court, 1882, for Edgefield. The jury found a verdict in favor of the plaintiffs for the sum of $5,000; and the present appeal is from the judgment entered upon this verdict.

The appeal is based upon fourteen exceptions; but, as is usual where exceptions are so numerous, many of them rest upon the same alleged error presented in a different form. The first involves nothing more than a question of fact, and, as the case below was a jury case, we do not understand how it could be relied on here as a ground of appeal, in view of the emphatic provision of the constitution, that in such cases the jurisdiction of the court is limited to the correction of errors of law, and

also the often-repeated announcement of this court that it has no appellate jurisdiction except in cases of chancery.

The second charges error to his Honor in permitting "the account of sales submitted by the plaintiffs to go before the jury without any proof as to the charges and statements contained therein." It is stated in the brief, that his Honor, in allowing this account of sales to go to the jury, said that "it was not to be regarded as evidence in itself, but was allowed to go to the jury, like a note or other paper requiring proof, to give opportunity to prove them;" and further, "that if the declarations, acts and conduct of Marshall Frazier, connected with the account of sales referred to and the reclamation made upon him by Beach, Root & Co., were such as to have induced a reasonable man to believe that he (M. Frazier) recognized such an account-sales as correct, and if the plaintiffs, Blakely and Copeland, acting in good faith and under such belief, were induced thereby to pay such reclamation, then it would be competent for the jury to regard said account-sales as proved, at least as against M. Frazier and the defendants, his executors." This account of sales, admitted under these circumstances, we think, was properly admitted. The judge seems to have fully explained to the jury that the introduction of the account was not intended as evidence of the items embraced therein, but as containing the debt in an itemized form, subject to proof, by the admission, conduct or acts of Marshall Frazier in connection therewith, or otherwise. Thus explained, there can be no valid objection to its admission.

The third exception alleges error, "because his Honor permitted the 'award' to go to the jury it having been heretofore decided in this case to be incompetent evidence to prove the overdraft by Frazier on his lot of cotton." It is not necessary now to construe the former opinion of this court on the subject of this award; but admitting that the appellants' interpretation of it is correct, to wit, that the award in itself was incompetent to prove the overdraft by Frazier on his lot of cotton, yet this would not exclude the award entirely from the case. This award was a part of the history of the case. It was one of the facts by which the plaintiffs became connected with the transaction, and the case could not be understood well without its introduction.

It does not appear that it was introduced by the plaintiffs, or was admitted by the court as competent evidence in itself, of the fact that Marshall Frazier had overdrawn to that extent on his cotton; but as a part of the transaction in which the plaintiffs had paid the money, which they were claiming, and also as a basis upon which to found the introduction of evidence of the acts and conduct of Marshall Frazier in reference thereto. We see no error in its admission.

The fourth and fifth complain, that the verdict of the jury is not in accordance with the charge of the judge in regard to the value of gold and exchange, and as to the amount which Frazier was entitled to in U. S. currency on that account as the proceeds of his cotton, and that such being the fact, his Honor should have set aside the verdict and granted a new trial as moved for by appellant. The Circuit judge does not state fully the reasons of his refusal to grant the new trial. He does state, however, that it appeared to his satisfaction, that the evidence was sufficient to sustain the verdict, and that there was not proper ground for the new trial; and, therefore, he refused the motion. The verdict was for a good deal less than the amount claimed. How the jury reached the verdict of $5,000, is not for this court to inquire. It may possibly have been capricious and unsupported by the evidence. If so this was a matter to be corrected on the motion for a new trial. It does not appear that it was reached by a disregard of the legal propositions charged by the judge in the matter, which constitutes the foundation of these exceptions, and, therefore, said exceptions are untenable.

The sixth, seventh, eighth, ninth, tenth, eleventh and twelfth exceptions involve alleged errors of omission in refusing to charge as requested therein. These requests seem to have been intended to intensify the legal principle, that it was necessary for the plaintiffs to prove the correctness of their demand, and that this could only be done in a certain way. The sixth exception is an illustration, in which his Honor was requested to charge, "that there could be no proof of an overdraft by Frazier on his cotton until it was shown by proof that the cotton was duly sold, and what it brought, and that all charges made upon it for ex-

penses must be proved to have been actually made, and that they were reasonable and proper charges against the same."

The plaintiffs' cause of action was founded upon an allegation that they had paid for Marshall Frazier, and at his special instance and request, a certain sum of money, on account of an overdraft of his on a lot of 212 bales of cotton consigned through Messrs. Marshall, Beach & Co., to Liverpool. The judge charged, in general terms, that to entitle the plaintiffs to recover, they must prove their demand. He did not undertake to specify the different links, so to speak, in the chain of proof; nor would he have been warranted in doing so. Nor was he required to confine the plaintiffs to one mode or channel of proof. Suppose it had been possible for the plaintiffs to prove that Marshall Frazier had admitted in terms that he was indebted to them in the sum mentioned, and for the consideration mentioned. In such case it would not have been necessary for plaintiffs to have gone into the items demanded by the defendants. All that would have been necessary, would be proof simply of the general admission, and the defendants upon such admission would have been liable, whether the different items embraced in the account were correct or not. If the plaintiffs, at the instance and request of Marshall Frazier, paid a sum in gross for said Frazier, which he at the time recognized as a valid claim against him, it would be a very hard rule against the plaintiffs to require of them in a suit against Frazier, to prove that the debt in all its items was really a valid debt; and that Frazier had made no mistake in acknowledging it. We think the judge's charge was sufficiently comprehensive on this point, and that he was not bound to charge as requested in these different requests.

The thirteenth exception need not be considered, as it is on appeal from the facts.

The fourteenth, which is the last, presents the only difficult question in the case, to wit, whether the action was barred by the statute of limitations? It was on account of this that a re-argument of the case was ordered for the last term of this court. The argument upon which the statute is invoked by the defendants is as follows: It is said that there were two executors of

the will of Marshall Frazier, and that no action could be regarded as having commenced against the estate, until process had been issued against both; that the estate was one, and that the two executors represented that unity, and, therefore, process had to issue against both before the estate could be said to be sued. This is the principle'of law for which the appellants contend, which no doubt is correct. *Hopkins* v. *Admrs. McPherson*, 2 *Bay* 194.

Then it is contended, as matters of fact, that while process was issued in time against W. L. Frazier, one of the executors, to save the statute, yet that the other executor was not made a party until long after the statute had run out, and that inasmuch as the estate was not sued until both executors were impleaded, that the statute could be invoked for the benefit of the estate, when the second executor was brought in.

There is no dispute as to the facts. It is admitted that the action was not barred when W. L. Frazier was sued, and it is also admitted, that the statutory period had elapsed, when the process was lodged for Sanders. The facts of the case, bearing upon the question of the statute, are as follows: The right of action against the estate of Marshall Frazier accrued to the plaintiffs on December 10th, 1866. Frazier died August 5th, 1870. Had he lived, the statute would have been completed as a bar on December 10th, 1870. Summons was lodged against defendant Frazier, as executor, August 25th, 1871, but not served until November 6th, 1871. At the time the summons was lodged, giving the plaintiffs the benefit of the nine months after the death of Marshall Frazier, the action was brought in time; as adding the nine months the time did not expire until September 10th, 1871, whereas the summons against the defendant Frazier, as executor, was lodged, as we have said, August 25th, 1871. Frazier having suggested that Sanders was also executor, the plaintiffs obtained leave from Judge Melton, March 2d, 1872, to amend their summons and complaint by adding the name of Sanders, one of the executors, as defendant to the action. At that time the statute had run out, and if the estate was not already sued, the statute was a bar. Nothing seems to have been done under this order. On October 25th, 1873, after the case had

gone to the jury, it was withdrawn, and Judge Carpenter, presiding, gave leave to the plaintiffs to amend their complaint within thirty days by making William A. Sanders, as co-executor, a party defendant with apt words to charge him. The complaint was thus amended November 22d, 1873, which, with summons against both Frazier and Sanders, as executors, was lodged in sheriff's office in Edgefield county, January 7th, 1874, and in sheriff's office Greenville, March 24th, 1874, and served on Sanders, January 14th, 1874, and Frazier, March 27th, 1874.

Now the first question which arises upon these facts is, Has Sanders ever been made a party to the action commenced originally against W. L. Frazier? The appellants contend: First. That new parties cannot be brought in until, under the order of the court, the summons has been amended; and, Second. That when leave has been obtained to amend either the summons or complaint, one or both, the order granting the leave must be strictly complied with or the step taken will be a nullity. These two propositions seem to be sustained by the authorities cited and relied on by the appellants. They embrace matters of practice under the code, and we think appellants' construction is supported by the following cases and authorities: 2 *Wait Pr.* 504; *Follower* v. *Laughlin*, 12 *Abb.* 105; *Walkenshaw* v. *Perzel*, 32 *How. Pr.* 310; 5 *Rob.* 648; 7 *Rob.* 606; 1 *Wait Pr.* 490; 2 *Wait Pr.* 508–9; *Kelly* v. *Downing*, 2 *Brev.* 302.

Now, in March, 1872, the plaintiffs obtained leave to amend their summons and complaint, but no action was taken under this order, and it expired. Nearly two years after this, to wit, on October 25th, 1873, they obtained a second order granting leave to amend the complaint within thirty days, but this order was not complied with strictly, the plaintiffs not having lodged for service any paper until January 7th, 1874—more than thirty days, as allowed by the order. The defendants, in their answer, set up this non-compliance and claimed the benefit thereof. In other words, they substantially raised the question of jurisdiction over the defendant Sanders on the ground that he was not properly in court; and they have continued to claim that benefit throughout, and have pressed their right to it on this appeal. A

question of jurisdiction may be raised at any time, and being raised, the court must pass upon it.

We think, upon the authorities cited, that appellants' position must be sustained, and that Sanders has never been legally made a party defendant to the original action; and, therefore, so far as he is concerned, the judgment below must be reversed. What effect will this have as to W. L. Frazier? This must depend upon the fact whether Sanders was a necessary party. If not, it is admitted that the action as against W. L. Frazier was within time, and the plea of the statute, therefore, could have no avail. Now, was Sanders a necessary party? This must be answered by determining whether Sanders was one of the executors of Marshall Frazier. The object of plaintiffs' action was to recover a claim on the estate of said Marshall Frazier; and no one but the legal representative of said estate was a necessary party defendant.

The question whether Sanders was one of the executors of Marshall Frazier, it is true, has been much complicated in the progress of the case. We learn from the evidence that the Probate Court of Edgefield county granted letters testamentary to him in 1871; that afterwards, to wit, April, 1875, on petition of the plaintiffs, these letters were revoked; and upon appeal to the Circuit Court a consent order was passed by Judge Carpenter November 19th, 1875, reversing this revocation. We do not know upon what ground the parties consented to the order of Judge Carpenter. It may have been upon the ground that the plaintiffs had no legal right to institute proceedings by petition or otherwise before the Probate Court to revoke Sanders' letters; that they were strangers, and had no cause of action in that regard, and, consequently, could have no status in court on the subject; or it may have been upon some other ground. We do not know; but whatever may have been the ground, we do not see that this should preclude this court from examining the question whether the Probate Court exceeded its jurisdiction in granting letters testamentary to Sanders.

While it is established as a general doctrine that the judgment of a court of record, or at least of a court of general jurisdiction, is to be held binding until vacated by a proper proceeding

to that end, yet this does not legitimize a judgment which is patently outside of the jurisdiction of the court pronouncing it. *Moore* v. *Smith*, 11 *Rich.* 569. Now, jurisdiction involves two elements—the subject-matter and the parties. If either of these elements are wanting the judgment is null and void, and may be disregarded wherever met with. No doubt the Probate Court has "jurisdiction in matters testamentary and of administration;" and no doubt this includes the appointment of administrators in case of intestacy, and the granting of letters testamentary in cases of testacy. But this jurisdiction is not unlimited in either case as to the appointment of administrators; the power conferred is subject to the limitation made by the law, that the appointment should be made in a certain order. The judge of Probate has no power to step beyond or outside of this order in opposition to the wish of the parties entitled; and the appointment of a stranger to the estate over the widow, the children, the next of kin, or creditors, would be beyond his jurisdiction, and therefore null. It may be that in such case of intestacy the appointment should be revoked by a direct proceeding.

So, too, the Probate Court has jurisdiction to grant letters testamentary; but this is not an unlimited power. He has no authority or jurisdiction to nominate and appoint an executor. This power belongs alone to the testator. The Probate Court has power to clothe the executor appointed by the will with legal authority to act; but to allow him to disregard the nomination in the will, and upon his own motion to make a new appointment, would be monstrous; and wherever he attempts to do such a thing, it should be utterly disregarded as an unwarranted assumption of power. *Perry* v. *St. Joseph and Western R. R. Co.*, 29 *Kan.* 420, and the cases there cited; *Ford* v. *Travis*, *MS. Dec.*, Court of Appeal of S. C.; *Griffith* v. *Frazier*, 8 *Cranch* 9. Under these principles, we think that the Probate judge in Edgefield transcended his jurisdiction when he attempted to grant letters to Sanders. The will need not be recited here; it will be found in the brief. But it is perfectly apparent from the terms of the will that Sanders had no right whatever to the letters granted, and that he has really been appointed executor of Marshall Frazier—not by Frazier him-

self, but by the Probate judge. And no one will contend that because the Probate judge has jurisdiction in matters testamentary and of administration, that he also has jurisdiction to appoint executors other than those nominated in the will.

This brings us to the conclusion that Sanders was not a necessary party to the action below; and further, that the estate of Marshall Frazier was in court when the summons was lodged for service upon W. L. Frazier, as executor thereof. And such being the fact, the statute of limitations was properly overruled. See this case, 11 *S. C.* 122.

It is the judgment of this court that the judgment below be affirmed as to W. L. Frazier, executor; and that the case be dismissed as to Sanders, who, in our judgment, is not only an unnecessary but an improper party.

A petition for rehearing was filed in this case, but the court, by its order of December 8th, 1883, refused to grant a rehearing.