| 13 | 291 |
|----|-----|
| 101 | 441 |

</div>

SITZMAN and another *vs.* PACQUETTE and another.

Ejectment.  Plaintiffs claimed as heirs of P.  Defendants claimed through a sale
  of the land in controversy for the payment of the debts of P.'s estate, made
  under an order of the probate court of Crawford county, upon the application
  of a person who was appointed by said court in September, 1845, administra-
  tor *de bonis non* of the estate of P.  The judgment of the court below in favor
  of the plaintiffs was affirmed upon a division of opinion between Justices
  COLE and PAINE, DIXON, C. J., taking no part in the decision, the case having
  been tried before him while a judge of the circuit court.

PAINE, J., was of opinion that under the territorial statutes of 1839, the probate court had no jurisdiction to appoint an administrator *de bonis non*, except in the contingencies mentioned in the statute, such as the death of the executor or first administrator, his incapacity, removal from the state, &c.  2. That it appeared upon the face of the record offered in evidence in this case, that no such contingency had occurred, and the appointment of an administrator *de bonis non* of the estate of P. was therefore void.  3. That a sale of the real estate of a decedent under an order of a probate court, granted upon the application of a person assuming without authority to act as his administrator *de bonis non*, was void.

COLE, J., was of opinion that notwithstanding anything in the record offered in evidence, it ought to be presumed that some one of the contingencies mentioned in the statute as authorizing the appointment of an administrator *de bonis non*, had occurred.

By a treaty with the Winnebago Indians, the United States agreed to grant to P. certain lands, to be selected, &c., and after P.'s death a patent issued, granting to him and his heirs the lands so selected, the treaty and patent both containing a restriction against alienation by the grantee without the permission of the President.  COLE, J., was of opinion, 1, That notwithstanding the restriction, the land was liable to sale by order of the probate court, for the payment of the debts of P.'s estate, and that the restriction against alienation contained in the patent was repugnant to the granting clause, and void.  2. That under the statute of 1839, the probate court, in the case of an application by an administrator to sell real estate to pay debts, was not required to appoint a guardian for the minor heirs, nor to cause notice to be given to their guardian.  3. That under the statute of 1839, personal notice to the heirs, of the application for an order of sale, was not required, and that notice by publication was sufficient.  4. That a bond given by an administrator for the due observance of law in conducting the sale of the real estate and accounting for the proceeds, was a sufficient compliance with the statute, although it was made payable to the county judge of Crawford county, who granted the license to sell, and the real estate sold under it lay in other counties.  5. That an administrator who offered the real estate at public auction on the day of sale named in the advertisement, during the proper hours, and received no bids, had a right publicly to adjourn the sale to the next day, at the same place and between the same hours.

Upon the last five points, PAINE, J., expressed no opinion.

ERROR to the Circuit Court for *Dane* County.

This was an action to recover part of section 20, town 8, range 8, in Dane county.  The plaintiffs read in evidence the treaty made between the U. S. and the nation of Winnebago Indians, on the 1st of August, 1829, by the 5th section of which it was agreed that from the land therein ceded, there should be granted by the U. S., "to be located without the mineral country, under the direction of the President,  *  *  *  to Pierre Pacquette two sections," and several sections to other persons named, with the qualification that said grants were "not to be leased or sold by said grantees

to any person or persons without the permission of the President of the United States;" and also a patent from the U. S. to Pierre Pacquette, dated August 20th, 1845, reciting that sections 18 and 20 in said T. 8, R. 8, had been located as the reserve of said Pacquette in conformity with the treaty, and approved by the President, and that the same were thereby granted to said Pierre Pacquette and to his heirs, " but according to the terms of the fifth article of said treaty, not to be leased or sold by said grantee to any person or persons whatsoever, without the permission of the President of the United States." It was also proved that the plaintiffs *Moses* and *Theresa Pacquette*, were the only children and heirs at law of Pierre Pacquette, who died intestate in the territory of Wisconsin, in September, 1836, they being at his death between five and nine years of age.

The defendants admitted possession of the premises in controversy, and offered in evidence transcripts of certain records of the probate court of Crawford county, the material portions of which were the following :

1. Letters of administration of the estate of Pierre Pacquette, granted to H. L. Dousman and Joseph Pacquette on the 2d day of January, 1837.

2. The petition of H. L. Dousman and Joseph Pacquette, filed in said court on the 17th of May, 1841, stating that they had duly administered upon the estate of said Pierre Pacquette, and settled and adjusted the personal estate belonging to the deceased, and a part of the real estate, and distributed the moneys arising therefrom among the creditors, as would appear by their account therewith filed ; wherefore they prayed that said account and settlement might be accepted, and that they might be discharged from their trust as administrators of said estate; upon which the judge of probate made an order of the same date, by which, after reciting that said administrators had performed their duties according to law, and had rendered a true account of their administration, it was decreed " that, in accordance with their petition, their account be accepted and they be discharged from any further liabilities or responsibilities on account of the said estate of Pierre Pacquette."

3. The petition of Alfred Brunson, presented to the same judge of probate in September, 1845, stating that at the request of H. L. Dousman, agent of the principal creditors of the estate of Pierre Pacquette, he prayed the court to grant him letters of administration *de bonis non* of said estate; upon which, on the 11th of October following, the judge of probate made an order in substance as follows: "On hearing said petition and referring to the records of this court, it appears that letters of administration were originally granted by this court on the 2d day of January, 1837, and that the administrators of said estate closed and settled up the administration of the personal property of said estate, leaving most of the real estate unadministered, and prayed to be discharged from further administering upon said estate; whereupon, on, &c., the said administrators settled their administration of the personal property of said estate to the satisfaction of this court, and were discharged from further responsibility, without administering on the real property of said estate, leaving debts due to creditors to the amount of near $10,000; and whereas the creditors are desirous that said estate should be settled, and none of them appearing to be willing to take upon themselves the trouble of administering, but some of the principal creditors having desired Alfred Brunson to administer, he having applied, (and notice of the pendency of the application having been given according to the usual practice of this court), and on the day assigned for hearing said application, no person appearing to object to it, it is therefore ordered that said Alfred Brunson be appointed administrator *de bonis non* of the estate of the said Pierre Pacquette, and that letters of administration issue to him as follows:" [here the letters of administration were set forth.]

4. The petition of Alfred Brunson, filed in said court on the 24th of October, 1845, alleging that he was administrator *de bonis non* of the estate of said Pierre Pacquette; that there appeared to be yet due to the creditors of said estate over six thousand dollars, and that there were yet unsold seven sections of land in different parts of the territory of Wisconsin, the sale of which would be required to discharge

said debts; and praying for an order of the court for the sale of said real estate.

5. A notice of the hearing of the application for the sale of said real estate. This notice was signed by Alfred Brunson, and stated that he had applied to the court of probate for the county of Crawford, in the territory of Wisconsin, for a license to sell all the estate of Pierre Pacquette which had not been sold, consisting of seven sections of land granted to the Winnebago half-breeds, &c., the sale being necessary to pay the balance due on the several claims allowed against the estate, and that said court had appointed the 31st day of December, 1845, at 10 o'clock A. M., to hear and determine upon said petition, and that all persons concerned were requested to take notice thereof, and then and there show cause, if any they had, why license to sell such real estate should not be granted. This notice was dated October 25, 1845, and there was attached to it the affidavit of the publisher of a newspaper published at Madison, that a copy of the notice had been published in that paper for four successive weeks, commencing on the 6th day of November, 1845.

6. An order of sale of said real estate, made on the 31st day of December, 1845, which was in substance as follows: "At the same term, day and year was taken up the petition of Alfred Brunson for license to sell the real estate of Pierre Pacquette, this being the day set apart to decide upon said application, and it having been satisfactorily shown to this court that the notice of application for the sale of said real estate had been duly published according to law, and no person appearing to object to the sale of said real estate, and the court being satisfied that it is necessary for the payment of the debts due from said estate of said Pierre Pacquette deceased, [that said real estate] should be sold to pay the said debts; it is therefore hereby ordered and decreed, that Alfred Brunson, administrator *de bonis non* as aforesaid, be authorized to sell said lands and real estate, and that a license issue to him in words following:" The record sets forth the license, which directs that Bronson should, on or before the 1st of July following, at the court house doors in

the several counties in which said real estate was situate, (after giving notice according to law in the Madison Express), sell at public auction the real estate described, among which was the land in controversy. It also contains a copy of the bond executed by Brunson and his sureties, payable to the judge of probate of the county of Crawford, with condition that he should faithfully observe the directions of the law in the sale of said real estate, and dispose of the proceeds of the sale agreeably to law.

6.   A copy of the advertisement of sale of said real estate, dated March 2, 1846, which stated that the lands in controversy would be sold at the door of the capitol in Madison, on the 27th of April following; underneath which advertisement was another, dated April 14, 1846, which stated that said sale was adjourned to the 25th of May following; attached to which was the affidavit of the publishers of the Madison Express, that the first notice was published in that paper for six successive weeks, commencing on the 12th of March, 1846, and that said notice, with that of postponement annexed, had been published in said paper for four weeks, commencing on the 23d of April, 1846.

7.   An account filed by Brunson in the probate court on the 23d of November, 1846, stating the price at which each tract of land was sold by him, with a statement of the expenses attending the sales, showing the net amount left for distribution among the creditors; and an order of the court directing its distribution among the creditors *pro rata*.

To the reading of these transcripts in evidence, the plaintiffs objected; and the circuit court decided that they were inadmissible.

The defendants then offered in evidence the record of a deed of the land in controversy, from Alfred Brunson, as administrator *de bonis non*, to Julius T. Clark, through whom they claim title. The deed was in the usual form of administrator's deeds, but recited that the administrator attended at the court house door of the county of Dane, on the 25th of May, between the hours of 9 A. M. and 4 P. M., for the purpose of offering said lands for sale, and no person appearing to bid therefor, he adjourned the sale thereof pub-

licly to the next day; and on the next day, between the hours aforesaid, offered the lands at public outcry, and sold the same (being 640 acres), for $73 60, to said Clark, who was the highest and best bidder therefor. To the admission of this deed the plaintiffs objected, and the court excluded it. The defendants asked the court to instruct the jury "that unless the plaintiffs had showed that the estate of Pierre Pacquette had been settled and his debts paid, they could not recover in this action;" which instruction was refused. Verdict and judgment for plaintiffs.

*Abbott & Clark*, for plaintiffs in error:

The restriction in the patent in regard to alienation, is void; or if not void, was personal and ceased with the death of the grantee. Coke Lit., 223, a; *Blackstone Bk. vs. Davis*, 21 Pick., 42; *Hall vs. Tufts*, 18 id., 455; 4 Kent's Comm., 5; Shep. Touch., 129; *Halley vs. Northampton*, 8 Mass., 37; Preston on Est., 420, 427, 485; Bacon's Ab., Tit. "Condition," L. The words in the patent create neither a condition nor a limitation. Shep. Touch., 122, 125; Coke Lit., 1, a. The reason of the restriction ceased with the death of the grantee. His estate was then *in custodia legis*, and its alienation for his debts was governed by the general law of the state, which declared that "the real estate of the testator or intestate shall stand chargeable with all the debts of the deceased over and above what the personal property shall be sufficient to pay." 2. The probate court had authority to appoint administrators *de bonis non*. R. S., 1839, p. 311, sec. 6. It had therefore the right to decide whether the contingency had occurred to make such an appointment proper, and its decision cannot be reviewed in a collateral proceeding; and if this court could examine that question collaterally, the court should presume, the record not showing the contrary, that circumstances existed which made it proper. 3. As to the objection that due notice of the application for the sale of these lands was not given to the heirs, the statute merely provides that "due notice should be given," without specifying the mode. R. S., 1849, p. 319, sec. 29. 4. Probate proceedings for the sale of real estate for the payment of debts, are proceedings *in rem*. The only question of ju-

risdiction is as to the power of the court over the subject matter before them. 2 How. (U. S.), 338; 3 Wheat., 312; 11 S. & R., 422. 5. As to the objection that the administrator did not file a bond in the county of Dane, there is no evidence that he did not, but had he failed to do so it would not vitiate the sale. 11 Mass., 226. 5. As to the objection that there was no report and confirmation of the sale, counsel argued that the account of sales filed by the administrator was a sufficient report, and the action of the court upon it was equivalent to a confirmation; but the law required neither. R. S., 1839, p. 316. By sec. 25 of the act, the administrator, upon receiving license, could sell, and make a deed which would convey title. Title acquired under an administrator's sale cannot be defeated by showing any error in the proceedings before the surrogate, in any other way than by appeal. *Jackson vs. Crawford*, 12 Wend., 533; *Jackson vs. Robinson*, id., 436; *Thomson vs. Tolmie*, 2 Pet., 157; *Goodrich vs. Thompson*, 4 Day, 215; *Brown vs. Lanman*, 1 Conn., 476; *Perkins vs. Fairfield*, 11 Mass., 227; *Bush vs. Sheldon*, 1 Day, 170; 4 Wash. C. C. R., 720; *Leonard vs. Leonard*, 14 Pick., 280; *Grignon's Lessee vs. Astor*, 2 How. (U. S.), 319.

*S. U. Pinney*, for defendants in error:

The lands were not liable to be sold to pay the debts of Pierre Pacquette, without the consent of the President of the U. S. His deed, without having been approved, would have been void, and would have given not even color of title. *Sunol vs. Hepburn*, 1 Cal., 254; *Martin vs. Johnson*, 1 Con. La. R., 433. He could not have conveyed the land in satisfaction of a debt, and it is difficult to see how his personal representatives could make any disposition of his property that he could not have made. The lands were not selected until after his death. They were a mere gratuity; and when the patent issued in 1845, the title passed directly to the present plaintiffs. Pierre Pacquette was never seized of the land, and had no interest in it that could be sold to pay his debts. His death did not operate to enlarge his estate. *Verden vs. Coleman*, 4 Ind., 457. The probate court could grant license to sell, and the administrator could sell, only the real

June Term, 1860.

SITZMAN et al.
v.
PACQUETTE
et al.

estate of which the deceased was seized at the time of his death. Ter. Stat., p. 316, c. 29. If the administrator could sell the land without the consent of the President, the object of the restriction would be defeated, and a result accomplished indirectly that could not be accomplished by direct means. 2. The probate court was a court of limited jurisdiction, and the person claiming under its proceedings must show affirmatively the facts necessary to confer jurisdiction. Such facts should appear on the face of the record, and no presumption can be indulged in to support its proceedings so far as the question of jurisdiction is concerned. Ter. Stat., 1839, p. 296, sec. 2; *Bloom vs. Burdick*, 1 Hill, 130; *Dakin vs. Hudson*, 6 Cow., 221; *Corwin vs. Merritt*, 3 Barb. (S. C.), 341; *Wilson vs. The Baptist Education Soc.*, 10 id., 308; *Seaman vs Duryea*, id., 523; *The People vs. Corlies*, 1 Sandf. (S. C.), 228; *Ford vs. Walsworth*, 15 Wend., 449; *Brodess vs. Thompson*, 2 Har. & Gill, 120; 4 Mass., 121; 7 id., 183; 2 id., 125; 2 Vt., 362; 5 Blackf., 462; 2 Mass., 120, 212; 7 id., 78; 11 id., 506. The record does not show that the probate court had any jurisdiction to appoint an administrator *de bonis non*. Such an appointment could be made only in one of the cases provided for by the statutes (Ter. Stat., p. 313, sec. 14), and the facts constituting such a case must appear in the petition for such appointment, or the court had no jurisdiction to grant the prayer of the petition, because there was no *case* before it on which it could act. *Grignon's Lessee vs. Astor*, 2 How. (U. S.), 339; *Thompson vs. Tolmie*, 2 Peters, 157; *McPherson vs. Cunliff*, 11 Serg. & R., 431; *Thayer vs. Homer*, 11 Met., 104. The record shows merely that the administrators first appointed had proffered, four years before Brunson's application, their voluntary resignation; but the court had no power to accept such resignation. 1 Williams on Ex'rs, 330—1, 463, 479, 484; *Grandison vs. The Countess of Dover*, 3 Mod., 24; *Hensloe's Case*, 5 Coke, 71; *Griffith vs. Frazier*, 8 Cranch, 9; *Webb vs. Dietrich*, 7 Watts & Serg., 401; *Miller vs. Meetch*, 8 Barr, 421; *Gasque vs. Moody*, 12 Smedes & Marsh., 156; *Vick vs. Vicksburg*, 1 How. (Miss.), 439; 6 Geo., 432; *Washington vs. Blount*, 8 Ired. Eq., 256; *Flinn vs. Chase*, 4 Denio,

June Term, 1860.

SITZMAN et al.
v.
PACQUETTE
et al.

90. And since the record shows that the appointment of Brunson was made without authority, its validity may be called in question in this collateral proceeding. *Wales vs. Willard*, 2 Mass., 125; *Sumner vs. Parker*, 7 id., 79; *Heath vs. Wells*, 5 Pick., 140. 4. On the death of the ancestor, real estate descends to the heirs, and their title is perfect and absolute, though the statute provides a method by which they may be divested of it, and the real estate sold for the benefit of creditors. Proceedings for that purpose are therefore void unless the probate court obtains jurisdiction of the *persons* of the heirs, which cannot be done without giving them notice of such proceedings in strict compliance with the statute. 2 Black. Comm., 430; 4 Kent, 446; *Wilson vs. Wilson*, 13 Barb., 252; *Pierce vs. Alsop*, 3 Barb. Ch., 186, 195; 10 Barb., 523, 376; *Covell vs. Weston*, 20 Johns., 414; *Schneider vs. McFarland*, 2 Coms., 459; *Sibley vs. Waffle*, 16 N. Y., 180; *Palmer vs. Oakley*, 2 Doug. (Mich.), 478; 1 Hill, 130; 8 Blackf., 542; 3 Barb., 341; 7 Wend., 148; 6 Wheat., 119; 1 Smedes & Marsh., 351; 6 id., 269; 7 id., 449, 479; 6 How. (Miss.), 230; 8 How. (U. S.), 540; 12 Ohio, 253; 4 Bin., 97; 6 N. H., 370; 13 Mass., 222; 11 id., 510; 3 Sum., 339. Counsel distinguished the cases of *McPherson vs. Cunliff*, 11 Serg. & R., 432, and *Moore vs. Rham*, 2 id., 377, by a reference to the peculiar statutes of Pennsylvania. The record in this case does not show that any guardian was appointed for the infant heirs, or that notice was ever given or ordered to be given to any person as such guardian. Such notice could not be given by publication, except where the party interested was not an inhabitant of the territory and had no guardian, agent or attorney therein to represent him. 5. The bond given by the administrator was not executed, as the statute required (Ter. Stat. p. 317, sec. 30), "to the judge of probate for the county in which the land lay;" and this is sufficient to avoid the sale. *Campbell vs. Knights*, 26 Me., 224; *Parker vs. Nichols*, 7 Pick., 111; 7 Mass., 491; 20 Wend., 241; 1 Scam., 323. 6. The adjournment of the sale from the day appointed to the next day, without giving notice anew, was unauthorized and rendered the sale void. *Wellman vs. Lawrence*, 15 Mass., 326. 7. Counsel distinguished

this case from that of *Grignon's Lessee vs. Astor*, 2 How. (U. S.), 319, by the fact that the record under review in that case was the record of a court of general jurisdiction.

June Term;
1860.

SITZMAN et al.
v.
PACQUETTE
et al.
January 2.

PAINE, J.    This was an action of ejectment, brought by the defendants in error to recover the possession of certain lands, which they claim as heirs of Pierre Pacquette deceased.    There is no dispute that the title was originally in him, for the plaintiffs in error claim under a sale by an administrator *de bonis non*, appointed on his estate, by the probate court of Crawford county.    The record showing this sale was offered in evidence, but was objected to for several reasons, and among others, because the appointment of the administrator *de bonis non* was void.    If this was so, the sale by him, of course, conveyed no title.

Whether the appointment was void or not, depends on the question whether the probate court had jurisdiction to make it.    And this involves an inquiry of no small difficulty, in view of the confused state of the authorities upon that subject.

I have had occasion, in the cases of *Rape vs. Heaton* [9 Wis., 328], *Wanzer vs. Howland* [10 id., 8], and *Falkner vs. Guild* [id., 563], argued at the last term, to express my views fully on this subject of the jurisdiction of courts, and I do not propose to repeat them here.    It will be seen from what I have there said, that I am in favor of maintaining some certain and intelligible rules, and not of following a few modern cases, which seem inclined to obliterate all boundaries of jurisdiction, and for the sake of confirming judicial sales, which the records fail to support, supplying everything by presumption.

It appears from the record offered in this case, that Hercules L. Dousman and Joseph Pacquette were the original administrators, and acted as such from January, 1837, until May, 1841.    They then presented a petition asking for a settlement of their accounts, and to be discharged, which was done.    In 1845 a petition was presented which appears in the record, and is in these words: " The undersigned, at the request of H. L. Dousman, agent of the principal credi-

tors of the estate of Pierre Pacquette deceased, late of said county, respectfully prays your honor to grant him letters of administration *de bonis non* on the estate of said Pacquette, and as in duty bound will ever pray, &c." Signed "ALFRED BRUNSON." Upon this petition, notice of hearing was given, and Brunson was appointed administrator *de bonis non*. The question is whether the probate court had any jurisdiction to appoint him. It is obvious that the petition states no facts showing jurisdiction, because it states no facts at all. It cannot be said then to have conferred jurisdiction, unless it be the law that when a court of limited, inferior jurisdiction is authorized to act only upon a certain state of facts, a bare request for it to act, without setting forth any of those facts, is sufficient to give jurisdiction. Such a proposition is certainly at variance with a long line of decisions upon that question, though I am not prepared to deny that there are a few authorities that would support it. The case of *Grignon's Lessee vs. Astor*, 2 How., 319, has been thought to go great lengths in that direction, and has been somewhat criticised for that reason. See *Palmer vs. Oakley*, 2 Doug. (Mich.), 433, which contains a very able opinion upon this subject ; also *Cooper vs. Sunderland*, 3 Clarke (Iowa), 134. Those cases which have in the greatest degree relaxed all rules upon this subject, have always cited *Grignon's Lessee vs. Astor* in support of their position. The case of *Poor vs. Boyce*, 12 Texas, 440, is an illustration. The statute of that state allowed a sale by administrators for the payment of debts. A petition was presented setting forth simply that the real estate was in litigation, and that it would be expensive to the estate to recover it. It was held that this gave the court jurisdiction, and *Grignon's Lessee vs. Astor* is cited. But I do not understand even the rule of that case to support such a proposition. The court quotes its previous decisions, defining jurisdiction as follows : "The power to hear and determine a cause is jurisdiction ; it is *coram judice* whenever a case is presented which brings this power into action. If the petitioner presents such a case in his petition that on a demurrer the court would render a judgment in his favor, it is an undoubted case of jurisdiction." To this definition

June Term,
1860.

Sitzman, et al.
v.
Pacquette
et al.

I fully agree. But it is obvious that the power to hear and determine spoken of, means the power to hear and determine the cause or matter presented, and not merely to determine whether the tribunal has jurisdiction of it or not. This latter power every tribunal has of necessity, but that is not jurisdiction of the case. If it were it would lead to this absurdity. There are some cases over which a court of limited powers has not jurisdiction. Suppose such a case brought before it. It evidently has the power to decide whether it has jurisdiction or not. But this power is jurisdiction ; therefore it has jurisdiction in a case over which it has no jurisdiction.

Jurisdiction is the lawful authority to hear and determine the cause upon the allegations made. And the best test is that given by the court, that the allegations should be sufficient on their face to warrant the court to act. The court accordingly apply, or profess to apply, this rule to that case. They say : "No other requisites to the jurisdiction of the county court are prescribed than the death of *Grignon*, the insufficiency of his personal estate to pay his debts, *and a representation thereof to the county court where he dwelt*, or his real estate was situate, making these facts appear to the court." In that case the record showed that a petition was presented, but did not show what it contained. And although the court, commenting on the looseness and imperfection with which records are sometimes made up and presented, dispensed with the necessity of its appearing, yet they do assume that the facts upon which the law authorized a sale were "represented" to the court, in accordance with their rule that such representation was an element of its jurisdiction. I think this case, therefore, by no means sustains the position, that a bare request for the court to act, setting forth nothing on which to found its action, or even one setting forth none of the facts on which the law authorized it to act, but others entirely different, would of itself confer jurisdiction. If it would, every means of testing the jurisdiction of inferior tribunals is practically annulled. I think, therefore, that if jurisdiction existed to hear and determine

whether an administrator *de bonis non* should have been appointed, it was not derived from the petition.

But it may be assumed that the petition was based upon the facts appearing of record in the matter of that administration. I think it would be by far the more correct practice, to set forth the facts authorizing the action of the court, in the application. But if those facts appear of record in the same estate, and the court looks at the record and acts upon that, I am willing to hold that it might treat the record as a representation of those facts, and that its action should not be avoided for want of jurisdiction if the previous record showed it. The court did look into the record in this case, and the validity of its action must therefore depend upon the question whether that showed such a state of facts as gave it in law the power to appoint an administrator *de bonis non*. The Territorial Statutes of 1839 were in force at that time. On page 296 is found the act establishing courts of probate, and conferring their jurisdiction and powers. They had power to take the probate of wills, grant letters of administration on the estates of persons deceased, having been inhabitants of or residents in the same county at the time of their decease, appoint guardians, &c., examine and allow accounts, &c., and to "have cognizance of all such other matters and things as the laws of this territory do or may direct." Section 6 of " An act concerning executors and administrators," p. 311, provides that when an executor or administrator should reside out of the territory, and refuse to settle his account, &c., " or when any executor or administrator shall become insane, or otherwise incapable of, or otherwise unsuitable to discharge the trust reposed in him, the judges of probate, in their respective counties, are authorized and empowered in such cases to grant letters of administration with the will annexed or otherwise, as the case may require, to such other person within the territory as to the said judges may seem meet;" and the administrator thus appointed " shall have the same power and authority to administer the estate of the deceased not administered upon by the former executor or administrator, and be subjected to the same duties, in as full and ample manner as if the execu-

tor or administrator so removed or residing without the territory as aforesaid, were actually dead." Section 9 provides that the judge may order further security to be given, and that on the neglect or refusal of the administrator or executor, he may grant letters to others. Section 8 provides that on the death of an executor, and section 14 that on his removal from the territory and refusal to account, &c., letters of administration with the will annexed might be granted. These are all the provisions having any bearing upon the power of the probate court to grant letters *de bonis non.* No rule is better settled than that these courts derive their powers from the statute, and can exercise none except those which the statute gives, and that so far as acquiring jurisdiction over the subject matter is concerned, the statute must be strictly complied with. In the language of the New York court of appeals (*Sibley vs. Waffle,* 16 N. Y., 185), "These principles are elementary, and no citation of authority to sustain them is necessary."

It is obvious that the probate court had no jurisdiction to appoint an administrator *de bonis non,* unless the case came within some of the provisions of the statute, nor unless the powers of the original administrators were legally at an end. They were not dead; they had not removed from the territory; they had not been required to give further security and refused; they had not been removed from the trust on account of any alleged insanity, incapacity, or unsuitableness. All this appeared on the face of the record. It is difficult therefore to see how it can be said that any of the contingencies had happened upon which the statute authorized the appointment of an administrator *de bonis non.* The record shows simply that the administrators had presented a petition in which they averred that they "had duly administered upon said estate, and settled and adjusted the personal property and part of the real estate;" "therefore, they asked to have their accounts allowed, and to be discharged from the trust as administrators." Upon the hearing, the court found that they had "performed their duties as administrators according to law," "had rendered true accounts," and therefore their accounts were allowed, and they

were "discharged from any further liabilities or responsibilities on account of said estate." There was no express resignation of the trust. It is true they asked to be discharged, but that seemed to be based upon the idea that they had, as they alleged, "duly administered the estate," though it appeared that there were debts unpaid and real estate unsold. There is nothing in the decree that by any apt words imports a cessation of their powers as administrators, but it discharges them from "responsibility or accountability to any person or persons whatsoever." It appears to be only the settlement of their accounts, and discharging them from all liability or responsibility, while it appeared that the estate was not fully administered. It seems to be entirely similar to the case of *Matthews, Adm'r, vs. Douthitt and wife*, 27 Ala., 273. The administratrix there had asked for a settlement of her final account, due notice had been published, and on the hearing a decree was made allowing her account, and "that said administratrix go hence discharged from further liability as such administratrix." The court held that this clause in the decree was utterly void, the administratrix not having resigned nor been removed, and the eighteen months during which by law the liability was to continue, not having expired. They held that it did not affect her rights or authority as such, and the appointment of an administrator *de bonis non* was void. It seems to me, therefore, that by the true interpretation of the proceeding here, it amounted only to a settlement of the administrators' account, and to a discharging them from liability or accountability in respect to the matters contained in that account, and that it did not in law operate as an extinguishment of their authority.

But it might, perhaps, without doing violence to the substance of the proceeding, be held equivalent to a resignation, and an acceptance thereof by the court. And the question would then be, whether they had any authority to resign, or the court any power, in that state of facts, to appoint an administrator *de bonis non*. Though I had never had occasion to examine it, when this question was suggested on the argument, I was strongly of the opinion that such power existed But upon an examination of the authorities, I have

been compelled unwillingly to come to the opposite conclu-
sion. The statute does not provide for the resignation of
the trust, nor for the appointment of an administrator *de*
*bonis non* on the happening of that contingency. Whence,
then, is the power derived? That question I have been
unable to answer.

Provision is made for such appointment in several emer-
gencies. This not being named, the maxim *expressio unius
exclusio est alterius*, would seem to apply, particularly in con-
nection with the rule that the powers of these courts are de-.
rived entirely from statute. Still if it were well established
at common law or by the practice in other states, independent
of statutory provisions, that administrators might resign and
new letters be granted, I should labor hard to resist the
application of this maxim, and to hold that the legislature
intended that the probate court should exercise this power,
according to such common practice, even though not provi-
ded for. But I find no such practice established either at
common law or by the decisions of other states. On the
contrary, the weight of authority and the course of legisla-
tion upon the subject indicate that such power of resignation
does not exist in the absence of a statute authorizing it. In
*Hensloe's Case*, Coke's Reports, vol. 5, p. 67, the law is thus
stated: "For after the executors have once administered,
and so have once taken upon them the charge of the execu-
torship, they cannot afterwards refuse." And on page 68 it
is stated that the ordinary had no power to accept a refusal
in such a case, his power being exhausted on proving the
will. In 1 Salkeld, p. 308, the same rule is stated. It is
said: "The executor, by administering, has taken upon him
the executorship and has put it out of his power to refuse.
9 Co., 36, b, *Hensloe's Case*. And where an executor admin-
isters, though he refuses afterwards before the ordinary, yet
administration cannot be committed during his life, and if
administration be granted it is void, and so is 1 Mod., 213,
*Parten's Case*." *Parten's Case* sustains the position. An ex-
ecutor had intermeddled with the goods of the testator, and
afterwards refused before the ordinary, who thereupon
granted administration. This grant was held void, for the

June Term,
1860.

SITZMAN et al.
v.
PACQUETTE
et al.

reason that the executor, having once acted, could not refuse.

In *Jackson vs. Whitehead*, 3 Phillim. Ecc. Rep., 577, the same rule is recognized, though an executor was there allowed to renounce after taking the oath and giving an appearance, but this was placed expressly on the ground that he had not intermeddled with the effects so as to charge himself as executor. But there seems to be some conflict in the English authorities on the point, which is noticed in Williams on Executors, vol. 1, p. 227, where it is conceded that the old cases hold that there would be a want of jurisdiction in the ordinary to grant administration after the executor has administered. It is said that those cases were decided while there was great jealousy of the ecclesiastical courts. And the author then proceeds with great caution to say : " The law, it should seem, is now taken to be, that the ordinary *may* (though perhaps he ought not), accept the executor's refusal, notwithstanding he has administered." But the authorities cited seem to me to go no further than this, that where an executor refused to act when cited by the ordinary, administration granted would not be held void, except as a protection to the executor, on proof that before refusal he had acted *in pais*. To that effect are the remarks of the lord chancellor in *Doyle vs. Blake*, 2 Sch. & Le., 237, where he said " the acts *in pais* of the executor could not be set up against his renunciation," by a third party. But these cases do not go to the extent of saying that after the executor has proved the will and afterwards administered, he may still at any time renounce the trust, and the ordinary have power to grant administration. I have found no English cases establishing that position. On the contrary the point of controversy seems to have been, whether he was absolutely precluded from renouncing when cited by the ordinary, by mere acts *in pais* before proving the will. And this seems to imply that if he did not then renounce, but proved the will and afterwards acted, there was an end of the question of renunciation, or the power of the ordinary to grant administration. And there is some reason for the position taken by the cases last alluded to. For the ordinary would not know of the acts *in pais* of the executor, rendering

June Term, 1860.

SITZMAN et al. v. PA... ...TTE al.

him liable as such, but would be warranted in 'cting on his renunciation. And there would be reason for h lding such action valid if possible. But where the executor proved the will and afterwards acted, his acts rendering him liable would then be matter of record, and the ordinary presumed to know it. And an administrator stands upon the same footing as an executor who has proved the will and afterwards administered. For his title is derived from the law, and is made matter of record in the first instance.

In this country there are several decisions upon the point. In *Flinn vs. Chase,* 4 Denio, 86, it was expressly held that the surrogate had no jurisdiction to accept the resignation of an administrator, and to appoint another, and that having done so, the new appointment was void. In *Washington vs. Blount,* 8 Ired. Eq., 253, the court say: "Can the executor resign? We think not. He has accepted and entered upon the discharge of his trust, and can only be removed upon a suggestion of unfitness or unfaithfulness." In the case of *Ford vs. Travis,* referred to in the opinion of Chief Justice MARSHALL, 8 Cranch, 27, the court of appeals of South Carolina said, that having proved the will, the executor " was in the nature of a trustee; he could neither abandon his trust nor be deprived of his interest in the estate of the deceased by any act of the ordinary. The ordinary, by proving the will, executed his power, and no law exists in this state authorizing him to resume it during the life of the qualified executor, notwithing he may be absent from the state. Letters of administration granted under such circumstances are void *ab initio.*" In the matter of *Dyer,* 5 Paige, 534, the chancellor said the surrogate had no power to accept the resignation of a guardian appointed by himself, unless provided for by statute. In *Miller vs. Meetch,* 8 Barr, 417, the executor had renounced, but it was claimed that he had been sworn as such and therefore could not renounce. The court held that he might renounce notwithstanding, following the English cases before referred to. But they said expressly that if he had also "received and administered any of the assets of his testator, the power to relieve him of the burden of the trust could only be exercised by the or-

phan's court of the proper county, in pursuance of the third section of the then existing act of 1797."

In *Thayer vs. Homer*, 11 Met., 104, the executors had proved the will, and qualified according to law. Afterwards one of them presented a petition to the judge of probate, setting forth that some question had arisen as to his right to certain property under the will, and that in litigating that question his interests would be in conflict with his duties as executor, and asking leave to resign and be discharged for that reason. The statute there in force was the same as our territorial statute of 1839, authorizing a removal of the executor because insane, incapable or otherwise evidently unsuited to discharge the trust. The counsel contended that the executor had no power to resign, and cited a subsequent statute expressly authorizing such resignation, to supply the defect previously existing in the law. He further contended that the reasons set forth in the petition did not constitute such unsuitableness as the statute contemplated. But the court held that the probate judge had jurisdiction of the application to remove, on the alleged ground of unsuitableness, and that therefore the case came within the statute, and the decree was not a nullity. They do not say expressly that the executor could not resign without any reason whatever, yet I think it is implied almost as clearly as though they had said it. For the point having been made by counsel, it is hardly to be presumed that they would have entered into a labored argument to show that the grounds of unsuitableness set forth in the petition brought the case within the jurisdiction of the probate judge under the statute, if, independent of any statute, he would have had jurisdiction to accept the executor's resignation and discharge him at any time, without other reason than his own wish. And indeed it was expressly decided in that state, in *Sears vs. Dillingham*, 12 Mass., 368, that an executor accepting the trust and qualifying, could not be permitted to resign. There are also statutes in several of the states providing that executors and administrators may resign, showing an understanding on the part of their legislatures that a statute was needed to authorize it.

June Term,
1860.

Sitzman et al.
v.
Pacquette
et al.

I have found but one case conflicting with these views, that of *Steen vs. Bennet*, 24 Vt., 303. An administrator having resigned, a new one was appointed, and the validity of it being questioned collaterally, the court held that no reason for the resignation appearing, it must be held to have been for a legal reason, and that the whole power of appointing administrators was with the probate court, and its exercise could not be questioned collaterally. The difficulty with this decision is its assumption that a resignation may take place for any reason. The court did not attempt to show that it could. And if it could not, then it appeared on the face of the record that the probate court had no jurisdiction to make the second appointment. I do not see how this decision can be sustained, except upon the broad proposition that no order made by a probate judge for the appointment of an administrator can be questioned collaterally, he having general jurisdiction over the subject. But in answer to such a proposition, I would refer to the reasoning of Chief Justice MARSHALL in *Griffith vs. Frazier*, 8 Cranch, 9; and I must be permitted to hold with him, that "to give the ordinary jurisdiction, a case in which by law letters may issue, must be brought before him."

I do not determine to what extent presumptions may be indulged in to support the proceedings of probate courts, where no want of jurisdiction appears on the records. There are several cases which seem inclined to place them on the same footing as courts of general jurisdiction. But here, if correct in the position that in the absence of a statutory provision, an administrator cannot resign, nor a new one be appointed, the want of jurisdiction appeared on the face of the record offered.

I have examined this question carefully, and have come unwillingly to the conclusion stated. I think the law should provide for such resignation. But as I am to determine what the law is, and not what I think it ought to be, I am forced to say, that in the absence of a statute authorizing it, the probate courts have no power to appoint an administrator *de bonis non* on the resignation of the original administrator.

I think the judgment should be affirmed.

June Term,
1860.

Sitzman et al.
v.
Pacquette
et al.

January 2.

COLE, J.   To defeat a recovery in this action, the plain-
tiffs in error on the trial offered in evidence a certified tran-
script of the record of the proceedings of the probate court
of Crawford county, in the matter of the estate of Pierre
Pacquette deceased, the ancestor of the defendants in error,
for the purpose of showing a sale of the land in controversy
for the payment of the debts of said Pierre Pacquette.   The
plaintiffs in error claimed title under this sale, by certain
mesne conveyances from the purchaser.   To the reading of
the record in evidence an objection was taken, and the same
was excluded by the court.   It does not appear upon what
ground the circuit court ruled out the record, but it was
probably held inadmissible for the same reasons which have
been given on the trial in this court to show that it was not
competent testimony for any purpose.   It therefore becomes
necessary to notice the various objections taken to the record.
One objection taken was, that the lands in controversy were
not liable to be sold to pay the debts of Pierre Pacquette,
without the consent of the President of the U. S.   It was
conceded that by the statute in force in the territory of Wis-
consin in 1836, the time of the death of Pierre Pacquette,
when the goods and chattels belonging to the estate of any
person were not sufficient to answer the just debts of the de-
ceased, and this fact being made to appear to the probate
court of the county where the deceased person last dwelt, or
of the county in which such real estate might be situated,
that then such probate court was generally authorized and
empowered to license the executor or administrator of such
estate to make sale of the real estate so far as the same might
be necessary to satisfy the debts which the deceased owed at
the time of his death ; but it was insisted that on account of
the restriction contained in the patent from the U. S. to
Pierre Pacquette, the lands in question could not be sold for
any purpose without the permission of the President.   It
appears that by the fifth article of a certain treaty made in
1839 between the U. S. and the nation of the Winnebago
Indians, the U. S. agreed to grant to Pierre Pacquette two
sections of land, and by the terms of the article, the grants
were not to be leased or sold by the grantees to any person,

without the permission of the President of the U. S. The patent, after referring to this article of the treaty, and the grants therein agreed to be made, and giving a description of the sections, &c., proceeds to say, that the U. S., "in consideration of the premises and in conformity with the provisions of the said treaty, have given and granted, and by these presents do give and grant unto the said Pierre Pacquette, and to his heirs, the said tract of land above described, to have and to hold the same, together with all the rights, privileges, immunities and appurtenances of whatsoever nature, thereunto belonging, unto the said Pierre Pacquette and to his heirs and assigns forever, but according to the terms of the said fifth article of the aforesaid treaty, not to be leased or sold by [the grantee] to any person or persons whatsoever, without permission of the President of the U. S."

It is very difficult to perceive how any force or effect can be given to this restriction on the power of alienation, which is contained in the last clause of the patent. The patent grants to the patentee an absolute estate in fee simple in the land therein described, while it attempts to impose a restraint upon the power of alienation by saying that the grantee shall not lease or sell the lands to any person without the permission of the President. A condition in a grant or devise, that the grantee or devisee shall not alienate, is said to be unlawful and void, because it is repugnant to the estate granted. Co. Litt., 206, b, 223, a; 4 Kent's Comm., 131; *The Blackstone Bank vs. Erastus Davis*, 21 Pick., 42; 18 id., 455. This is not strictly what is termed a condition in law, either precedent or subsequent, annexed to the estate granted. There is no forfeiture of the estate if the lands are sold or leased without the permission of the President. Whether it might not be competent for the United States, in the exercise of their absolute dominion over the public domain, to impose conditions upon the lands granted which might infringe upon the essential enjoyment and independent rights of property, it is not necessary to determine. Manifestly such conditions would tend to public inconvenience, and would be contrary to the whole policy of the

general government, and therefore are not to be lightly inferred. The general rule in regard to the disposition of the public lands, as settled by the courts of the United States, is, that a patent passes a perfect title to them, and that whenever the title has passed by the patent, then the property, like all other in the state, becomes subject to state legislation, so far as the descent, devise or alienation thereof is concerned. The general government has uniformly claimed and professed to exercise a guardian care over the Indians with whom it has treaties, to prevent them from being imposed upon by the whites trading with them, and from being cheated out of their property; and it was undoubtedly in conformity to this humane policy that the clause above referred to was inserted in the treaty made with the Winnebagoes; and the same restraint on the power of alienation was probably inadvertently embraced in the patent afterwards issued. But still, the grant of the lands being absolute, without any condition annexed, and the grantee taking a perfect title thereto, upon the decease of Pacquette they became subject to the payment of his debts like other real estate owned by him at the time of his death. The restraining clause in the patent must therefore be deemed void, being repugnant to the estate granted.

But again it is insisted that the proceedings in the probate court of Crawford county, so far as the sale of the lands is concerned, are null and void. The first specific objection taken to them is, that it appears therefrom that the license for the sale was not obtained, or the sale made, by the original administrators of the estate of Pierre Pacquette. In the present state of this record it is undeniable that this raises a question of great difficulty, and candor compels me to say that I am not entirely satisfied with my own conclusion. Having some knowledge of the loose way in which business was transacted by the probate courts of the territory, fifteen years ago or earlier—of the imperfect manner in which their records were generally kept—of the confidence in the validity of titles derived from probate sales, which the decision of the territorial supreme court in the case of *Grignon et al. vs. Astor et al.*, in 1841, was so well calculated to inspire; consid-

June Term, 1860.

Sitzman et al.
v.
Pacquette
et al.

ering the number of *bona fide* purchasers who have bought at such sales, and who have made valuable improvements upon their estates, and whose possession will be rendered more or less secure by our ruling in this case, I am certainly conscious of a struggle in my own mind to maintain the sale made in this case, and this may possibly have led me to adopt the view I entertain. Nor is the light derived from an examination of authorities very clear or satisfactory, on account of the distressing conflict among them as to what effect should be given to the records of these courts when offered in evidence in collateral proceedings—how far they should be held conclusive, and what presumptions should be made in favor of the regularity and validity of their judgments and decrees.

In the present case no objection is taken to the regularity of the proceedings in the probate court up to the time of the appointment of an administrator *de bonis non*, who obtained the license and made sale of the lands in dispute. It is conceded that the probate court of Crawford county had jurisdiction of the subject matter of the settlement of the estate of Pierre Pacquette. The record fully shows that H. L. Dousman and Joseph Pacquette were lawfully appointed administrators of the estate in the first instance, and acted several years in that capacity. But it is contended that it appears from the record that they were not removed or discharged from their trusts for any cause which authorized the probate court to remove one administrator and appoint another, and therefore that such court had no jurisdiction to appoint an administrator *de bonis non*; and this being so, that all the proceedings of the latter in obtaining the license to sell and making sale, were null and void. But I think the most that can be said of the record upon this point is, that it fails to disclose any ground for discharging the former administrators and for appointing one *de bonis non*. It does not show that they were not discharged from their trusts for a good and valid cause—one which authorized the probate court to discharge them. As I understand it, the record is entirely silent upon the point. It appears that on the 17th of May, 1841, the administrators presented their account with the estate to the probate court or Crawford

county. At the same time they also present a petition stating that they have " duly administered upon said estate and settled and adjusted the personal property and estate belonging to said deceased, and a part of the real estate ; that they have paid over and distributed all the moneys and personal estate to and among the creditors, as appears by the statement and account herewith exhibited and filed." They pray that the account and statement of said estate may be accepted and approved. They also ask that they "may both be discharged from their said trust as administrators of the said Pierre Pacquette." The probate court then made an order which, after reciting that the petition, accounts and statements had been examined, &c., closes as follows : " It is therefore hereby ordered and decreed, that in accordance with their petition their account be accepted, and that they be discharged from any further liabilities or responsibilities on account of the said estate of Pierre Pacquette, and that letters of exemplification issue to them in words and figures following." Then comes an attested copy of the previous order " to exemplify the said Hercules L. Dousman and Joseph Pacquette, administrators as aforesaid, from all responsibility or accountability as administrators as aforesaid, to any person or persons whatsoever." We next find the petition of Alfred Brunson to the probate court, stating that " at the request of H. L. Dousman, agent of the principal creditors of the estate of Pierre Pacquette deceased," he asked that letters of administration *de bonis non* be granted to him. This application was made in September, 1845. Notice was given of the hearing of the application, and in October an order or decree was made that letters *de bonis non* issue to Alfred Brunson. In this order it was, among other matters, set forth that the former administrators had settled their administration for the personal property, to the satisfaction of the court, and " were discharged from further responsibility, without administering on the real estate, &c." The same thing is repeated in the letters granted to Brunson. This is all the record discloses in reference to the removal of the former administrators and the appointment of one *de bonis non.* Now let it be borne in mind that by sec-

June Term,
1860.

SITZMAN et al.
v.
PACQUETTE
et al.

tion 6, page 311 of the Territorial Statutes of 1839, the judge of probate was expressly authorized to remove an executor or administrator for several causes, among which were "when any executor or administrator shall become insane or otherwise incapable of, or evidently unsuitable to discharge the trust reposed in him." Here is a broad discretion vested in the judge of probate, to remove an administrator who had become incapable, or unsuitable to discharge the duties of that office. I can discover nothing upon this record which shows that the probate court did not remove the former administrators for a cause over which it had jurisdiction. They might have become physically incapable, from sickness or some other cause, of attending to the business of the estate. It is said that the administrators should then have stated that fact in their application to be removed, so that it might always affirmatively appear upon the record that the probate court acted within its jurisdiction; that if from disease or bodily infirmity they could no longer act, it should appear that they were removed for that reason. I think this would undoubtedly be the correct practice. But as the probate court had undoubted jurisdiction of the matter of the settlement of the estate, and was expressly authorized to remove administrators for certain causes, and did in fact remove the former administrators and appoint one *de bonis non*, and the record being silent as to the cause of the removal, ought we not to presume that the probate court acted within the sphere of its ordinary jurisdiction, and that what was done was rightly done? It seems to me that this presumption must be made in favor of the regularity of the action of the probate court. For the rule is recognized in many cases as applicable to orphans' courts, courts of probate, and other tribunals entrusted with the settlement of the estates of decedents, and with the power to sell real estate, where the personal estate is insufficient to meet the charges upon it, that when their jurisdiction has actually attached it will not be lost by any irregularity in exercising it, and every intendment will be made in aid of their proceedings. I can see no valid objection to this doctrine, and it appears reasonable and just. If there is a total want of

jurisdiction, the proceedings are void. But when jurisdiction is once shown, we ought to presume that the court acted rightly, there being nothing to show the contrary. It appears to me that this rule is, in effect, sustained by the following authorities: *Thompson vs. Tolmie*, 2 Peters, 157; *Grignon et al. vs. Astor*, Appendix to Territorial Laws of 1842, p. 24; *Same Case*, 2 How. (U. S.), 319; *McPherson vs. Cunliff et al.*, 11 S. & R., 422; *Fridge vs. The State, use of Kirk*, 3 Gill & Johns., 103; *Perkins vs. Fairfield*, 11 Mass., 227; *Brown et al. vs. Wood et ux.*, 17 id., 68; *Groff vs. Groff*, 14 S. & R., 181; *Jackson vs. Robinson*, 4 Wend., 436; *McFail vs. Crawfords*, 12 id., 533; *Tryon vs. Tryon*, 16 Vt., 313; *Williams vs. Sharp*, 2 Carter (Ind.), 101; *Horner vs. Bank of Indiana*, 1 id., 130; *Brown vs. Lanman*, 1 Conn., 467. Without stopping to examine these cases particularly, to show the precise point decided by them, they will be found, I think, fully to support the proposition above laid down. Some of them go much further than this, really denying that the general rule in regard to courts of inferior jurisdiction is applicable to the records of probate courts; while in *Grignon vs. Astor* and in *McPherson vs. Cunliff*, it is said that a proceeding in a probate court to sell real estate to satisfy the debts of the deceased, is a proceeding *in rem*, analogous to proceedings in admiralty, where the only question of jurisdiction is the power of the court over the subject matter. But this is going much further than it is necessary to go in the present case, and may assert a rule not sufficiently guarded to protect the rights of those interested in the estates of deceased persons. At the same time I feel the force of the suggestion that this court ought not lightly to disregard the decisions of the territorial supreme court and of the supreme court of the United States, in *Grignon vs. Astor*, since those decisions have a direct bearing upon the questions arising upon this record, and give a construction to statutes substantially the same as those under which the sale in the present case was made. And it is but fair to assume that many persons purchased at these sales relying upon the soundness of the decision in *Grignon vs. Astor*, and that the rules of law then applied to these proceedings were correct

June Term, 1860.

SITZMAN et al. v. PACQUETTE et al.

and would be sustained. I am therefore disposed to hold, since the record is silent as to the ground or reason of removing H. L. Dousman and Joseph Pacquette, as administrators of the estate of Pierre Pacquette, that we must presume they were removed for some cause which authorized their removal. For aught that appears they both might have been utterly incapable of attending to the proper administration of the estate.

Nor do I understand that this view of the effect of the record when offered in evidence in a collateral proceeding, essentially conflicts with anything decided in *Bloom vs. Burdick*, 1 Hill, 130; *Schneider vs. McFarland*, 2 Coms., 459, or *Palmer vs. Oakley*, 2 Doug. (Mich.), 433. In the first two cases it appeared that the plaintiffs, at the time of the application to the surrogate for license to sell real estate, were infant heirs of the decedent, and that no guardian was appointed for them by the surrogate as the statute required; nor did any guardian appear or act for for them in any stage of the proceeding. The statutory method of bringing the infants into court was not pursued, and therefore the court held in each case they were not bound. In the case of *Palmer vs. Oakley* it did not appear on the face of the decree of the probate court appointing Archangi Simmons guardian, that the minors were under fourteen years of age, or that they were cited to choose a guardian, and evidence was offered on the trial to show, that at the time of the appointment of the guardian, one of the alleged infants was over fourteen years of age, and that consequently the probate court had no power to appoint a guardian for him without first citing him to appear and choose his own guardian. These cases present a different question from the one at bar, where there is nothing to show the absence of authority to make the removal. From this view of the record it seems unnecessary to examine the question so fully discussed by counsel, as to whether an administrator, who has once entered upon the duties of his trust, can afterwards voluntarily resign at his pleasure. Again it is said that at the time application was made by Brunson, as administrator, for leave to sell the real estate, the defendants in error were minor heirs of the deceased, and

that the record does not show that any guardian was appointed for them, or that notice was ever given to any person as guardian for them, to appear and show cause why the license should not be granted. But I do not understand that under section 29, p. 317, Ter. Stat. of Wis., 1839, the probate court was required to appoint for infant heirs a guardian, to appear for such infants and show cause why the real estate should not be sold. A reference to the section will show that it says nothing about appointing a guardian. In this respect it is entirely unlike that of New York upon the subject, cited in *Bloom vs. Burdick* p. 140. Section 29 declares that " the said court, previous to passing on any petition or representation for the sale of real estate, shall order due notice to be given to all parties concerned, or their guardians, who do not signify their assent to such sale, to show cause, at such time and place as shall be appointed, why such license should not be granted," &c. . The record shows that the usual notice of the application to sell real estate was given by publishing the same in a newspaper printed at Madison for four successive weeks before the hearing thereof. It was assumed on the argument, that the due notice to be given to all parties concerned or their guardians, &c., when such parties resided in the territory, must be a personal notice. I think otherwise. The way and manner of giving the notice rested in the discretion of the probate court, and I am confident the practice in the part of the territory where I resided was to give the notice by publication in a newspaper. I think the record fully shows that "due notice" of the application was given in this case.

Some minor objections were taken to the validity of the record offered in evidence, as that the administrator did not give the bond required by law previous to the sale of the real estate, and that the administrator had no right to adjourn the sale "for want of a bidder," to the next day. I think the bond given was a sufficient compliance with the statute, and that there was no error in adjourning the sale for the reason assigned.

It follows from these views that I think the circuit court

erred in excluding the record from the consideration of the
jury, and that there should be a new trial.

DIXON, C. J., took no part in the decision of this case,
having decided it at the circuit.

Judgment affirmed.