AMBROSE L. SOULE v. FLAVIUS J. HOUGH.

*Constructive possession—Sufficiency of foreclosure by publication.*

Getting into the back kitchen of an occupied house through an open door when no one is in the room, and boarding up the rest of the house on failing to secure an entrance thereto does not establish such a constructive possession of the premises as will justify committing assault and battery upon the occupants if they attempt to remove obstructions.

A house is an entirety so long as it is occupied as such by a tenant, and the possession, by an adverse party, of a single room cannot be held a possession of the building to the exclusion of the tenant.

Due diligence in making service of a chancery subpœna upon a defendant who cannot be found is not exercised unless the effort to serve it is continued so long as service can lawfully be made.

A foreclosure is invalid that is based on an order of publication made upon complainant's affidavit that defendants could not be found, the subpœna having been returned before the return day.

The proof of defendant's absence and of diligence in seeking to obtain service on him upon which to base an order of publication in foreclosure should rest on the applicant's own knowledge.

Error to Ottawa.   Submitted Oct. 6.   Decided Jan. 28.

TRESPASS.   Plaintiff brings error.   Reversed.

*Akeley & Farr* and *Norris & Uhl* for plaintiff in error.

*Lowing & Cross* for defendant in error.

CAMPBELL, J.   Soule sued Hough for trespass, including an assault on his person, and the use of force in attempting to expel plaintiff and his family from their dwelling, and various acts of annoyance connected with the conduct in question.

Plaintiff was in possession under a party claiming title, and who actually owned it with a right of possession, unless cut off by foreclosure proceedings.

The testimony tended to show, and there is nothing contradicting it, that Hough, having got into the outer kitchen

of Soule's house through an open door, when no one was in the room, maintained possession of that, and attempted by force to get into the other part of the house, and failing in this, boarded up the premises and used violence and threatened to kill Soule if he attempted to remove the obstructions.

The court in effect charged the jury that the entry into the kitchen gave Hough such possession as justified him, if having title, in boarding up the rest of the house, so as to keep it from being habitable, and that the assault and battery, if committed in an attempt in a reasonable and moderate manner to keep plaintiff from knocking off the boards was not actionable.

The doctrine that a party may make entry and hold possession of a part of premises, and thereby get constructive possession of the rest, so as to turn the tenant out if he can do it peaceably, though with some force, cannot be applicable to such a case as this. The house, so long as occupied by a tenant, is an entirety, and the wholesome rule of law which forbids forcible entry would be of very little use, if by getting a foothold in a single room or outbuilding, an intruder, with or without title, could be held to be in possession of the principal structure to the exclusion of the family in actual occupancy. Under the general rules of law the possession of the principal covers the incident, and possession of the incident does not control but is subordinate. A dwelling is too important a refuge to be destroyed by any such indirection. The case is in its main features not unlike though much worse than *Seitz v. Miles* 16 Mich. 456; and the testimony indicates a great outrage. The jury could not under the charge have regarded the chief elements of damage.

The foreclosure proceedings, which, although pertinent, could not if regular have justified defendant's conduct, are claimed to have been invalid for any such purpose, or for any purpose. They were begun on the 16th of June, 1859, by James P. Scott against Lucy Piquette, Francis Piquette, and George Redfield, in the circuit court for the county of Ottawa. Lucy Piquette was owner of the land mortgaged. The decree was made by default against

her and her husband on publication, and not on service of process. The sale was made and report filed in August, 1860. No order of confirmation appears in the record, but it is recited as an order entered in the common-rule book in January, 1880, after this suit was brought, and only a few days before trial. We shall make no remark upon this, as possibly it is an error, and the case will not require it.

On the 16th of June, 1859, a subpœna was issued returnable on the 29th. On the 25th of June, which was less than ten days from its issue, and when it could not have been made legally returnable (Rule 9), the sheriff of Ottawa county made return on oath that he had served the writ on Redfield, but was unable to find the other defendants, and was informed and believed they did not reside in this State.

On June 30, 1859, complainant made an affidavit before a justice of the peace, setting out "that Lucy Piquette and Francis Piquette are residents of this State; that subpœna for their appearance has been issued in the above entitled cause, returnable on the 29th day of June instant, and that the same could not be served on the said Lucy Piquette and Francis Piquette by reason of their absence from the State of Michigan." On this, an order of publication was made by a circuit court commissioner.

The statute which is relied on to sustain this proceeding is section 5116 of the Compiled Laws, which authorizes such an order "when the defendant is a resident of this State, upon proof by affidavit that the process for his appearance has been duly issued, and that the same could not be served by reason of his absence from or concealment within this State, or by reason of his continued absence from his place of residence."

The statute is very clear that the cause for issuing the order of publication must be made out by *proof*, and this must come from some one who testifies on his own responsibility. And, according to the well-recognized rules of procedure, the process must be issued and diligent efforts made to serve it during its entire time allowed for service, and there must be a responsible showing why it was not served.

In this case the process was returned four days before its return-day, and the officer makes no showing of diligence before this, and no one makes any showing of diligence at all afterwards. There is a conflict of fact between the return and affidavit as to the cause of *non-service*. It was not possible that the complainant, who had no part in the service, could swear of his own knowledge to any diligence, and in the case of residents of the State, the issue and return of process is imperative, and here there was no lawful return of not found. It is not due diligence to make no effort to serve a writ so long as service can be lawfully made.

The rule of diligence in cases where the disability must be extended to the whole State and not a county was referred to in *Merrill v. Montgomery* 25 Mich. 73. The statute was never designed to encourage getting constructive service on a merely temporary absence, and the affidavit should leave nothing ambiguous as to the diligence used to find the parties. As a matter of fact there can usually be no difficulty generally in finding residents within a reasonable time ; and the court ought to have a sufficiently responsible showing to guide it in determining whether a case is fully made out. The English statute, which was intended chiefly, if not entirely, to reach residents who were absent, was construed in *Burton v. Maloon*, Barnardiston p. 401, as requiring a positive showing, and the New York court of chancery in *Evarts v. Becker* 8 Paige 506, is to the same effect.

We think the present showing cannot be upheld on any ground as sufficient.

The judgment must be reversed with costs and a new trial granted.

GRAVES, J. and MARSTON, C. J. concurred.

COOLEY, J., dissenting. An accidental circumstance having deprived me of the opportunity to explain my views when this case was decided, I should not deem it important to do so afterwards were it not that I think a very serious error has been committed which will not merely be injurious in this case, but will be destructive of many titles.

The suit was in trespass, and the main purpose in instituting it probably was to determine the title to certain lands. Hough claimed to be in possession claiming a right to occupy under an insurance company whose title was traced through a chancery foreclosure in a suit in which James P. Scott was complainant and Lucy Piquette, Francis Piquette and George Redfield were defendants. Lucy Piquette was mortgagor, and she and Francis Piquette were proceeded against as non-residents. The majority of the Court has determined that these proceedings were fatally defective, because the Piquettes were never properly brought in.

The proceedings were twenty years old when the suit was brought, and we are not informed that the validity of the foreclosure was ever questioned before. The fact is not important except as it brings forcibly before us the danger of over-nicety in criticising judicial proceedings; because they may be questioned after sixty years as well as after twenty, unless actual and continued possession has perfected a title under the statute of limitations. And if I am correct in my opinion that the proceedings were in conformity to the law, the error is emphasized and made more mischievous by the lapse of time.

I do not understand that any defect is pointed out except that the subpœna which was issued for service on the Piquettes was returned not served before the return-day had arrived. This appears to me a wholly unimportant fact. The statute makes no requirement upon the subject except that there shall be proof by affidavit that the process issued could not be served by reason of the absence of the defendant from the State. The officer's return does not necessarily show this, nor is it necessarily shown by his affidavit. Indeed, it is not essential that the writ be placed in the hands of an officer at all; any one may serve it, if service is practicable, and any one may show the impracticability of making service when such is the fact. I cannot think it possible that it was ever intended jurisdiction of a case should depend upon a circumstance so entirely unimportant as that a subpœna which could not be served was left in the register's office before its

return-day, instead of being kept in the office of the sheriff or of the party.

The proof by the affidavit of the complainant that the subpoena could not be served on defendants by reason of their absence from the State, is full and complete, and is made after the return-day of process was passed. As the averment is made in positive terms, we must take it as made on personal knowledge of the facts. We have no right to infer that the affiant did not know the facts as fully as the officer; but even if we could, it would be unimportant, for it was for the court which acted upon the proof and made the order for publication, to decide upon its sufficiency; no one can deny that the affidavit was "proof," so that a case was made calling for judicial action. If so, the order of publication cannot be held void without disregarding the authorities. *Brittain v. Kinnaird* 1 B. & B. 432; *Basten v. Carew* 3 B. & C. 649; *Sheldon v. Wright* 5 N. Y. 497; *Porter v. Purdy* 29 N. Y. 106; *Sitzman v. Pacquette* 13 Wis. 291; *Florentine v. Barton* 2 Wall. 211. We need not go for the principle further than to *Facey v. Fuller* 13 Mich. 527 and *Wall v. Trumbull* 16 Mich. 228, which fully cover it. But the case of *Pettiford v. Zoellner*, *ante*, p. 358, decided with the principal case, seems to me authority more than ample for my views; for it was there held that an affidavit based on information and belief, without disclosing the source of the information, was sufficient. But surely an oath to hearsay cannot be "proof" and an oath to actual knowledge not proof, especially when the source of the hearsay is not given so as to impose upon the party making the affidavit some feeling of responsibility to the criminal laws. There could be no doubt, I think, which "proof" a careful judge would consider most trustworthy.

But the real jurisdictional fact in these cases is the fact which, when shown by proof, authorizes the court to make the order of publication. *Pennoyer v. Neff* 95 U. S. 714. There is little danger, therefore, of any wrong being done by an order of publication being made unadvisedly. If a party is proceeded against as a non-resident when in fact he

has a domicile within the State, he is entitled as of right to have the proceedings set aside at any time, unless interests have been acquired by *bona fide* purchasers (*Jermain v. Langdon* 8 Paige 41), and possibly the case should be likened to that of administration upon the estate of a living person; in which case the proceedings are void though the proof as to the death may appear to have been complete and ample. *Moore v. Smith* 11 Rich. 569; *Jochumsen v. Savings Bank* 3 Allen 87; *Melia v. Simmons* 45 Wis. 334; *D'Arusmont v. Jones* (Tenn.) 11 Cent. Law Jour. 253; contra, *Roderigas v. Savings Institution* 63 N. Y. 460. But there has been no averment in this case that the jurisdictional fact did not exist; all that is claimed is, that it was not sufficiently shown. The parties proceeded against under the order for publication never appealed, and never applied to set aside the proceedings on the ground either of defective showing, or that the fact affirmed did not exist. Suppose they had appeared after decree but before sale, and moved to vacate proceedings on the sole ground that the affidavit was defective and without denying its truth; what possible equity could they have had for relief upon this ground? And what standing can others have upon equities which they fail to show?

Comment on any other branch of the case is unnecessary in view of the opinion on file.