## NEELS W. JOCHUMSEN *vs.* SUFFOLK SAVINGS BANK.

A depositor in a savings bank may maintain an action to recover the amount of his deposit, although, upon production of the deposit book, the bank has paid the amount due to one who has been appointed as his administrator under the erroneous belief that he was dead, after he had been absent for more than seven years without being heard from.

By-laws of a savings bank which provide that "upon the death of any depositor, the money standing to his credit shall be paid to his legatee, or heir at law, or legal representative," and that " it is agreed that such payment shall discharge the corporation," and that, "as the officers of this institution may be unable to identify every depositor transacting business at the office, the institution will not be responsible for loss sustained where a depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part on presentment," and that " no person shall receive any part of his principal or interest without producing the original book," will not prevent a depositor from maintaining an action against the savings bank to recover the amount of his deposit, which, upon production and delivery to it of the deposit book, it has paid to one who has been appointed as administrator of the depositor, under the erroneous belief that he was dead, after he had been absent for more than seven years without being heard from.

CONTRACT against a savings bank, to recover the amount of a deposit therein, with interest.

In the superior court, the following facts were agreed: The plaintiff, a Danish seaman, on the 10th of May 1848 deposited with the defendants one hundred and thirty dollars, and on the 26th of July following twenty dollars more, signed an agreement to be bound by the by-laws, and within a month after making the last deposit went to California, leaving his deposit book with one Benson, and was not heard from until June 1860, when he returned. In May 1860, Henry P. Rolfe was appointed by the judge of probate for Suffolk county as administrator of the plaintiff's estate, received the deposit book from Benson's widow presented it to the defendants' treasurer with a demand of payment, and, upon delivery of the book to him, received the amount of the deposit, with interest. Such of the by-laws of the defendants as are material, are copied in the opinion. Before the commencement of this action, the defendants, though satisfied of the plaintiff's identity, refused payment to him of the deposit.

Upon these facts, judgment was ordered in the superior court for the defendants, and the plaintiff appealed to this court.

*R. M. Morse, Jr.* for the plaintiff.

*C. P. & C. W. Huntington,* for the defendants.

DEWEY, J. There is nothing found in the by-laws of this savings bank that will prevent the plaintiff's recovery of the money deposited by him, if his rights are not barred upon the more general ground of payment to one authorized to receive the same under the general laws applicable to debtor and creditor.

We do not perceive in the 11th article of the by-laws any estoppel against the plaintiff. The language of the article is as follows : " Upon the death of any depositor, the money standing to his credit shall be paid to his legatee, or heir at law, or legal representative," " and it is agreed that such payment shall discharge the corporation." The death of the plaintiff not having happened, the by-law has no application.

Nor does the 23d article apply to the present case. That article is as follows : " Art. 23. As the officers of this institution may be unable to identify every depositor transacting business at the office, the institution will not be responsible for loss sustained where a depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part on presentment." Whether under the facts stated, this book could in any proper sense be said to be lost or stolen, would be questionable at least. The object of this by-law was to avoid loss occasioned by the inability of the officers of the bank to identify the depositor. But the bank did not make this payment to Rolfe through any mistake as to the identity of the person. He demanded it, not as the depositor, but as the administrator of he depositor, presenting his letters of administration ; and the oank paid it to Rolfe as administrator.

So also article 9th, which provides that " no person shall re ceive any part of his principal or interest without producing the original book," does not prevent a recovery in the present case. This original book is now in the hands of the defendants. They have whatever benefit would result from having the present

possession of it. If wrongfully there, as the plaintiff alleges, it would be but an idle ceremony to repossess himself of it by legal process, and then present it to them.

The decision of the present case turns upon a broader question, and one of more general application. The payment of this deposit was made to a person to whom administration had been granted, by the judge of probate for the county of Suffolk, upon the estate of the plaintiff, as a person having died intestate in another state or country, and leaving estate to be here administered upon. The supposed intestate now presents himself, a man in full life, denying all authority in Rolfe to act as his administrator, upon the ground that the proceedings by the judge of probate were void, he having acted without any jurisdiction in the matter.

That upon the facts now made apparent the judge of probate would have no authority to appoint Rolfe to act as administrator upon the estate of the plaintiff, is of course at once to be conceded. The only power he had to act upon the subject was that to be derived from Rev. Sts. *c.* 64, § 3. That authority is, to appoint administrators upon the estates of deceased persons. Jochumsen, the plaintiff, was not "a deceased person," or "a person who had died intestate, in any other state or country."

That the appointment of the administrator Rolfe was in derogation of the legal rights of Jochumsen is very clear, and admits of no question.

But the further inquiry is, whether the plaintiff is remediless, upon the grounds that the decree of the judge of probate, not having been appealed from, was final and conclusive, and that the person so appointed administrator was thereby rendered competent to do all the acts that a lawful administrator might do. The position taken by the plaintiff is, that this granting of administration was utterly void for want of jurisdiction in the judge of probate, and this objection, he insists, is fully open to him upon the facts stated in the case agreed to by the parties.

We are not without judicial authority upon the point of the conclusiveness of a decree of the judge of probate granting

administration, in cases where by law no such authority ex-
isted.   In the case of *Wales* v. *Willard*, 2 Mass. 120, to an
action of debt on a bond, brought by the plaintiff as adminis-
trator of one Abel Willard, the defendant pleaded that the plain-
tiff was not administrator of said Willard.   The plaintiff relied
upon letters of administration granted to him by the judge of
probate for the county of Worcester in 1801, whereupon the
defendant showed that the intestate had died more than twenty
years before that date, and so the judge of probate had no au-
thority to appoint an administrator.   Thereupon it was held by
the court that the grant of administration was wholly void ; and
it was said that it was not the erroneous exercise of his juris-
diction, but an assumption of power against law, and the grant
was *ipso facto* a nullity.   Judgment was rendered for the de-
fendant, thus deciding that it was competent to inquire into the
jurisdiction of the judge of probate, and if it was shown that
he had no authority to grant any administration in the case
to anybody, the appointment which he did make was a nul-
lity.

The next case in order of time was that of *Sumner* v. *Parker*,
7 Mass. 82, and arose on a judgment or decree of a judge of
probate ordering a partition of a reversionary estate over which
he had no jurisdiction.   The case of *Wales* v. *Willard* was
approved, and the judgment held void and inoperative.

But this question met with a more full consideration in the
case of *Cutts* v. *Haskins*, 9 Mass. 543, and the subsequent cases
arising upon the same state of facts.   That was a real action,
the party claiming under an administrator's sale, the adminis-
trator having been appointed and the order of sale made by the
judge of probate for the county of Suffolk.   Objection was
taken to the jurisdiction of the court of probate for the county
of Suffolk in granting letters of administration, and the other
proceedings by him in relation to the estate, on the ground that,
at the time of the death of the intestate, she was an inhabitant
and resident of the county of Middlesex, although previously
she had been an inhabitant of the county of Suffolk.   The
court admitted the evidence, and held the objection open to the

party, and upon proof of the facts held the appointment of the administrator and all the subsequent orders void, and rendered judgment in favor of the heir at law.

The same matter came before this court again in the case of *Holyoke* v. *Haskins*, 5 Pick. 20, with the additional fact that twenty years had elapsed since the granting of administration, and was fully argued, and the decision of *Cutts* v. *Haskins* affirmed. The point that the residence of the party deceased must necessarily have been before the probate court, and judicially acted upon, was pressed upon the court, but was not deemed sufficient to change the result. Upon the trial of this latter case, a more full investigation of facts showed that the question of the domicil of the intestate was difficult to be satisfactorily established; but that fact had no effect upon the question of jurisdiction. However close that question might be, if the domicil was shown to be in another county, the decrees which had been made were to be held void, and open to this objection by those whose titles to property would be affected thereby. For a third time, this question was raised between parties interested in that estate, in *Holyoke* v. *Haskins*, 9 Pick. 259, and with the like result. In these cases, it was urged that this question of the residence of the deceased, which alone gave jurisdiction, was a question to be decided by the court of probate when acting upon the application for granting administration, and was not an open question in the common law courts; but the court held otherwise.

In the case of *Smith* v. *Rice*, 11 Mass. 507, where, in a case of partition, the judge of probate had assumed a jurisdiction as to one of the parties, which was not authorized by law, the proceedings were declared to be void. It was said, by the court that " the proceedings in the probate court are not according to the course of the common law; their jurisdiction is special and limited."

In the case of *Sigourney* v. *Sibley*, 21 Pick. 101, the whole question turned upon the right of the particular judge of probate who granted administration to act in the matter. Evidence was admitted to show that, in the existing state of facts,

the judge of probate for the county of Worcester had no jurisdiction, and, this being shown, this court held the acts of the probate court void. The question arose incidentally upon proceedings in partition, but the objection raised was the want of jurisdiction in respect to the original administration granted upon the estate. The court held that it was no answer to the alleged want of jurisdiction, that no exceptions had been taken at the time to granting such appeal, and that want of jurisdiction, especially of a court of limited and special jurisdiction, cannot be aided by any waiver of exceptions. To these cases may be added that of *Coffin* v. *Cottle*, 9 Pick. 287, where in *scire facias* against the defendant as administrator of the estate of Nathaniel Russell, alleging a judgment recovered by the plaintiff against the estate of said Russell in the hands of the defendant, and a refusal by the defendant to pay the same, and also waste by him, the defendant set up in his defence that he never was legally appointed administrator, inasmuch as the judge of probate for the county of Nantucket, who granted such administration, had no jurisdiction in the matter, being a creditor of the deceased; with a further averment that, since the commencement of the present action and two years after the rendition of the judgment upon which the *scire facias* was brought, he had been appointed administrator on said estate by the judge of probate for the county of Barnstable. The defence was sustained, the fact of such interest in the judge of probate being admitted by the demurrer to the plea.

In *Emery* v. *Hildreth*, 2 Gray, 228, where the court held that, in an action by an administrator, the regularity of the appointment by a probate court having jurisdiction to appoint one could not be called in question in a suit by said administrator, yet they carefully confine the ruling to cases where the jurisdiction attaches, and distinguish it from the cases that have been cited.

In looking elsewhere for the views of judicial minds upon this question, we find the case of *Allen* v. *Dundas*, 3 T. R. 125. That was an action by an administrator of one Priestman against a debtor of the intestate, who had paid the amount

of the debt to one who was named as executor in a forged paper which had been presented and allowed in the prerogative court as the will of said Priestman. Subsequently those proceedings were for that cause set aside, and the estate declared intestate, and letters of administration granted to Allen, the plaintiff. The court held the payment to the executor a good defence, the prerogative court having jurisdiction of the case, and that their decree was sufficient authority to authorize payment to an executor thus appointed. Ashhurst, J. says : " Here the spiritual court had jurisdiction over the subject matter ; and every person was bound to give credit to the probate till it was vacated. The case of a probate of a supposed will during the life of the party may be distinguished from the present, because during his life the ecclesiastical court has no jurisdiction." p. 129. Buller, J. says : " This case was compared to a probate of a supposed will of a living person ; but in such a case the ecclesiastical court have no jurisdiction, and the probate can have no effect; their jurisdiction is only to grant probates of the wills of dead persons. The distinction in this respect is this : if they have jurisdiction, their sentence, as long as it stands unrepealed, shall avail in all other places ; but where they have no jurisdiction, their whole proceedings are a nullity."

We find very similar language in the case of *Griffith* v. *Frazier*, 8 Cranch, 24, where a question arose as to the legality of an appointment of an administrator while there was an acting executor holding under an earlier appointment, and as illustrating the question at issue Marshall, C. J. says : " Suppose administration to be granted on the estate of a person not really dead. The act, all will admit, is wholly void. Yet the ordinary must always inquire whether the person whose estate is to be committed to the care of others be dead or alive. Yet the decree of the ordinary that the person on whose estate he acts s dead, if the fact be otherwise, does not invest the person he appoints with the character or power of an administrator. The case in truth was not one within his jurisdiction. It was not one on which he had a right to deliberate."

It is supposed by the defendants that the decision in the case of *Newman* v. *Jenkins*, 10 Pick. 515, is adverse to the views now urged on behalf of the plaintiff. That was an action by Newman as administrator of one Chandler, to recover a promissory note payable to Chandler. In answer to the proposed defence that Chandler was not shown to be dead by an absence for three years, without being heard from, at the time of granting the administration, it was held that no plea in abatement having been filed, the letters of administration were sufficient to sustain the action. The further statement of the court as to the conclusiveness of letters of administration are of course to be taken as qualified by the remark, " If the defendant intended to contest that fact, he should have filed a plea in abatement." In alluding to that question, the court say, " There might be a question as to the effect that would be produced upon the action by his returning alive, but that point it is not necessary to consider."

The cases of appointments of guardians, to which our attention has been called, as sustaining the conclusiveness of a decree of the court of probate, are not analogous. The probate court has jurisdiction to examine and finally decide the question as to the existence of those facts upon which the granting of letters of guardianship is authorized.

Some reliance is also placed upon the manner in which the granting of letters of administration is treated in the opinions pronounced by Chief Justice Shaw in the cases of *Wheelock* v. *Hastings*, 4 Met. 510, and *Whithead* v. *Mallory*, 4 Gray, 184. The question before the court, and the only question to be decided, in those cases, was, as to the conclusiveness of the appointment of an assignee in insolvency. That question was fully met by a positive statute, making the appointment conclusive evidence in all suits by the assignee. *St.* 1838, *c.* 163, § 5. The reference to the case of an administrator was only by way of illustration. The general language used as to the conclusiveness of a decree of a judge of probate granting letters of administration, must be taken to have been made in reference to the class of objections recited, viz: want of proper notice, or some irregularity in the proceedings.

There were much stronger reasons for holding the entire conclusiveness of an appointment of an assignee than of an administrator. In the former case, the statute making such appointment conclusive evidence of its legality, has also made the most ample provision for correcting all errors in such appointment, and superseding all erroneous decrees of the court of insolvency. This power may be exercised on application to the court by any party aggrieved. It requires no appeal, and is not in any way restricted.

On the contrary, and this is one of the strong reasons for holding the question of jurisdiction not concluded, the only opportunity for reversing or modifying a decree of the court of probate is the limited one of an appeal to be taken within thirty days after the same is made, or where, through mistake, the party has omitted to do so, and this court, upon petition and cause shown, allows the appeal to be entered within one year.

No writ of error lies, as in cases at common law. No writ of certiorari lies, as in cases in other tribunals where the proceedings are not according to the course of the common law.

If it be urged that a refusal to give conclusive effect to a decree of court appointing an administrator may operate most injuriously upon innocent parties who have acted in reference to them, and given to them full faith and credit, it may be replied, that such is always the effect of holding judgments and decrees void for want of jurisdiction. It was so in *Loring* v. *Folger,* 7 Gray, 507, where a judgment against the principal in a trustee process commenced after the death of the principal defendant, and payment of the amount thereof by the trustee, all parties being in ignorance of the fact of the death of the principal, was held no bar to a suit against the trustee for the same indebtedness by the administrator of the deceased. The judgment of the court was no bar, because the court had no jurisdiction; the person sued was not a living man, and not within the process of the court for service or judgment.

The recent cases decided in the county of Worcester involving the question of the authority of one acting as a judge of insolvency, fully evince how powerless this court is to throw

protection around those who justify under a decree of a court of limited jurisdiction, which is shown, as to the particular case, to have had no jurisdiction. *Denny* v. *Mattoon*, 2 Allen, 361, and note.

It was further urged, as a ground for sustaining the appointment of the administrator, that upon the case as it existed at the time of granting letters of administration, the facts would well warrant the decree making such appointment, and give jurisdiction to the court of probate. The position taken is, briefly, that seven years' absence, upon leaving one's usual home or place of business, without being heard of, authorizes the judge of probate to treat the case as though the party were dead. The error consists in this, that those facts are only presumptive evidence of death, and may always be controlled by other evidence showing that the fact was otherwise. The only jurisdiction is over the estate of the dead man. When the presumption arising from the absence of seven years is overthrown by the actual personal presence of the supposed dead man, it leaves no ground for sustaining the jurisdiction.

The proceedings before the judge of probate were unauthorized, for want of jurisdiction, and the payment by the defendants to the person thus appointed administrator of Neels W. Jochumsen furnishes no defence to the present action brought by Jochumsen himself for the deposit made by him with the defendants.                    *Judgment for the plaintiff.*